## SIMS
*v.*
## THE GEORGETOWN COLLEGE.

RULE IN SHELLEY'S CASE; EXECUTORY TRUSTS.

1. The rule in Shelley's case is equally applicable to the limitations of equitable as to legal estates; but the estate of the ancestor and the limitation to the heirs must be of the same quality, that is, both must be legal or both equitable.
2. The same words that create an estate in fee simple, or an estate in fee tail, in legal estates, will, when applied to an equitable estate, create an estate in fee simple or fee tail in that estate.
3. And the only exception to the rule in its application to equitable estates is where a court of equity is called upon to direct the execution of an executory trust, in which case the court will apply the rule or not, as will best subserve the purpose and intent of the author of the trust.
4. An executory trust is where a trust is created either by stipulation or direction, in express terms or by necessary implication, to make a settlement or conveyance to uses, or upon trusts which are simply indicated but not finally declared by the instrument containing the stipulation or direction; and the form and limitations of the settlement or trusts are subsequently directed by the court.
5. By a devise to a daughter for life and after her death "to her heirs, share and share alike," the first taker, under the rule in Shelley's case, takes a fee. The additional words, "share and share alike," following the word "heirs" will not control the legal import of such word of limitation.
6. A devise to a woman to her separate use free from the control of her husband, does not alter the nature of the estate devised, so as to interfere with the application of the rule in Shelley's case, where the rule would otherwise apply. The separate use is distinct from the estate vested.

No. 57. Submitted June 13, 1893.—Decided September 5, 1893.

HEARING on appeal by the complainants from a decree of the Supreme Court of the District of Columbia holding an equity term, sustaining a demurrer to their bill. *Affirmed.*

STATEMENT of the case by the CHIEF JUSTICE:

The bill in this case was filed for the purpose of having certain deeds declared void and without effect as against the complainants, and to have a certain deed in the proceedings mentioned reformed, so as to vest an estate in the complainants.

It appears from the allegations of the bill, that the President and Directors of the Georgetown College, a corporation in the District of Columbia, being the owner of lot 15, in Square 924, in the city of Washington, sold the same to David Atkins, since deceased, for valuable consideration, and on the 20th of April, 1849, there was executed what was supposed to be a good deed to Atkins for the lot, by the Rev. Dr. Ryder, the then president of the corporation, but which deed was defective and without effect to convey the title, because executed by Dr. Ryder simply in his character as president of the college, and not by the corporation. Atkins, the vendee, paid the purchase money, and entered into possession of the property, and held and enjoyed the same down to the time of his death, in January, 1866. He left surviving him a widow and several children, among them Margaret Sims, the mother of the complainants. He left a last will and testament, dated the 18th of August, 1865, which was duly admitted to probate. In that will is contained, among others, the following devises:

"*Sixth.* I give and devise to my daughter, Margaret Sims, for life, that piece of land situated as aforesaid, in the city of Washington, and known and described on the aforesaid plat or plan as lot numbered fifteen (15), in square numbered nine hundred and twenty-four (924), and after her death the same to go to her heirs, share and share alike." And in another clause of his will, the testator declared that it was his purpose and intent that the devises and bequests made to his daughters should be "to their sole and separate use, as if *femes sole* and never married, and not to be in any way subject to or liable for the debts of any present or future husbands they may have."

It further appears, from the allegations of the bill, that the Georgetown College, for the purpose of curing the defect and informality in the deed of the 20th of April, 1849, on the 10th of January, 1883, executed a conveyance to Margaret Sims, the daughter and devisee named in the devise just recited; in which deed are recited the facts that she, Margaret

Sims, was then owner of the property in fee simple; that the previous deed to Atkins, the testator, was defective, and therefore the corporation made the deed of the legal estate to the devisee. It is also alleged that Margaret Sims, after this deed to her, sold and conveyed the property to another person, and that the defendants, other than the corporation, claim title derived from and through Margaret Sims. Margaret Sims is dead, and the complainants, her children and heirs-at-law, claim the property under the devise in their grandfather's will, a copy of which will is exhibited with and as part of the bill.

Upon the allegation of these facts, the complainants pray a decree declaring the title to be in themselves as devisees, and that the deed from the corporation of Georgetown College, so far as it purports to convey a fee simple estate to Margaret Sims, shall be held to be inoperative, and that the deed from Margaret Sims to her grantee, and the *mesne* conveyances to other defendants, shall all be declared null and void, so far as they purport to convey any greater estate than an estate for the life of Margaret Sims.

The bill was demurred to by the defendants, and the court below, upon hearing and after full and elaborate discussion of the question involved, sustained the demurrer, and dismissed the bill.

*Mr. Franklin H. Mackey* and *Mr. H. O. Claughton* for appellants :

1. The rule in Shelley's case is not a favorite with the courts of the United States and especially with the federal courts when construing a will. 2 *Redfield on Wills*, 323 ; *Daniel* v. *Whartenby*, 17 Wall., 639. The rule is not to be extended. *Guthrie's Appeal*, 37 Pa. St., 9. Margaret Sims took an estate for life only, because the words "and *after* her death the same to go to her heirs *share and share alike,*" take the case out of the rule in Shelley's case. Distributive words take the case out of the rule. *Lethers* v. *Gray*, 96 N. C., 548 ; *Ward* v. *Jones*, 5 Eq., 404 ; *Mills* v.

*Thomas*, 95 N. C., 362; *Findlay* v. *Riddle*, 3 Binney, 165; *Fulton* v. *Harman*, 44 Md., 251; *Horne* v. *Lyeth*, 4 Gill & J., 434; *Doe d. Strong* v. *Goff*, 11 East., 668; *Doe d. Long* v. *Laming*, 2 Burr., 1100. It has been said that the two cases last mentioned were overruled by *Jesson* v. *Wright*, 2 Bligh, 58. But Sir Edward Sugden in *Montgomery* v. *Montgomery*, 3 J. & Lat., 52, referred to both, and did not think them overruled by *Jesson* v. *Wright*. The following cases are also in point: *Crump d. Wooley* v. *Norwood*, 7 Taunt., 302; *Gretton* v. *Howard*, 6 Taunt., 94, affirmed in 1 Mer., 448; *Right* v. *Creber*, 5 B. & C., 866, cited with approval by Story, J. in *Sisson* v. *Seabury*, 1 Sumn., 235. This will is to be construed as of the time of its making. *Findly* v. *Biddle*, 3 Binney, 166.

Applying this rule we will see that it would be impossible to carry out the intention of the testator had it happened, as it well might have, that at the death of Margaret Sims a child had survived her and also two children of a deceased child as her only heirs. How, in that case, could the estate go to her heirs " share and share alike." By the course of descent the child would take one-half of the estate and the two grandchildren one-fourth each. But a distribution " share and share alike " would give the child and two grandchildren one-third each. To give effect therefore to the intent of the testator as expressed, a proper construction of his will requires that the heirs shall take as purchasers.

2. The devise was an executory trust, and the rule in Shelley's case can, therefore, have no application, because the *legal* title to the property in question was never in the testator Atkins; he had only the equitable right to require the Georgetown College to convey the property to him or his assigns. This right passed by his will to the mother of the complainants, and by her death has become vested in them. 1 Perry on Trusts, Sec. 359.

3. The devise was to the daughter for life, " to hold as her separate estate free from the control of her husband." Such an estate is entirely different in quality from the common

law legal estate which would go to the heirs. When the two estates differ in quality they cannot coalesce so as to give the first taker a fee, and although the books generally illustrate the rule by the example of a legal estate in the first taker and an equitable estate in the remainder-man and *vice versa*, yet the principle has the same application where an equitable *separate* estate is given to the first taker and a legal estate to the remainder-man. A devise of land to a married woman to hold as her separate estate is not recognized at common law. 2 Story Eq. (13th ed.), p. 729, note 1. It is only in courts of equity that such devises are recognized and effect given to the will of the testator by treating the estate as an equitable one and holding the husband (whose marital rights are not at law affected by such a devise) a trustee for the wife. 2 Story Eq., 709, 712. This estate, then, which was devised by Atkins to his married daughter, was an *equitable* estate and, therefore, could not coalesce with the legal estate given to the heirs. *Stoner* v. *Curwen*, 5 Simons ; *Earl of Verulam* v. *Bathurst*, 13 Simons, 385; 1 Perry on Trusts, Sec. 369.

4. The rule in Shelley's case does not apply to the case at bar because the rule is a rule of tenure and applies only to cases where the testator held his estate by a common law tenure. If he had no *tenure*, that is to say, common law tenure, in the estate which his will is to act upon, but only an equitable interest, the rule has no application.

Equity has never applied the rule in Shelley's case to the devise of such a purely equitable right as the testator Atkins held at the time of his death and by his will devised to his daughter, the mother of these complainants. There is a conflict in the English authorities upon the effect of a devise of a separate estate to the ancestor for life, remainder to her heirs, and a devise for life to the ancestor with remainder to the heirs, share and share alike; and the Supreme Court, in commenting upon these irreconcilable differences, in the exercise of its right to independent judgment, has approved of the law as decided in the case of *Bagshaw* v. *Spencer*, *Doe*

*v. Laming, Montgomery* v. *Montgomery,* and *Wright* v. *Creber* ; *Power* v. *Considine,* 6 Wall., 477, and *Daniel* v. *Whartenby,* 17 Wall., 643-644.

*Mr. B. F. Leighton* and *Mr. Job Barnard* for appellees :

No mere words of limitation superadded to the word " heirs " or " heirs of the body " will serve to defeat the operation of the rule in Shelley's case, unless the course of succession is thereby changed. *Horne* v. *Lyeth,* 4 H. & J., 431. In the case at bar, there are no limiting words after " her heirs." Equality of inheritance is in accordance with the provisions of the " Statute to Direct Descents," Act of 1786, Ch. 45, Sec. 2.

The phrase " share and share alike " after the words " her heirs," does not change the succession. Had Margaret Sims died intestate, not having sold the lot so devised to her, it would have descended to her heirs in equal proportions. *Clarke* v. *Smith,* 49 Md., 117.

The complainants aver that they are the only heirs of Margaret Sims, and their claim to the property in litigation is based upon that fact. This averment, if material, is fatal to their right of recovery, for, if they have any rights as heirs, it is because Margaret Sims had an estate of inheritance, with all of the qualities that attach to such an estate, including the power of alienation, so as to defeat the expectancy of her heirs. *Simper's Lessee* v. *Simpers,* 15 Md., 185 ; *Jones* v. *Morgan,* 1 Brown's Chan. Rep., 206. There is nothing in the instrument under discussion to indicate that the word " heirs " as therein employed was not intended to comprehend the whole class of heirs, and that they should become entitled to the estate on the death of Margaret Sims, in the same manner, and to the same extent, and with the same descendible qualities as if the devise had been to her and her heirs. The intention will not control the legal effect of the word " heirs." 4 Kent, Secs. 222, 226 and 228. The rule in Shelley's case does not effectuate the intention of the testator, but generally defeats it. It is

not a rule of construction, but of law.  2 Jarman on Wills, 242.  In cases, therefore, where the word "heirs" or "heirs of the body" are used, they will be construed to limit or define the estate intended to be conveyed, and will not be treated as words of purchase, and no supposed intention on the part of the testator or grantor, arising from the estate being conveyed in the first instance for life, will be permitted to control their operation, as words of limitation.  In all such cases, the estate became immediately executed in the ancestor, who became seized of an estate of inheritance.  *Ware* v. *Richardson*, 3 Md., 545; *Griffith* v. *Plummer*, 32 Md., 74. In this case the word "heirs" is used, thus bringing it within the exact letter of the rule.  What has been said or decided in cases where the word "issue," "children," or other forms of expression not *ex vi termini* within the rule, can be of little value in determining the proper construction of the will in litigation.  *Chelton* v. *Henderson*, 9 Gill, 432.  To determine whether the rule has application, the remainder and not the life estate is the point of inquiry.  Are the heirs or heirs of the body to take as a class in succession from generation to generation, is the test as to whether the limitation be within or without the rule.  *Stump* v. *Jordan*, 54 Md., 627; *Fulton* v. *Harman*, 44 Md., 263.  The rule is part of our inheritance from Maryland.  So well defined and clearly settled is it with its modifications, that the case of *Green* v. *Green*, 23 Wallace, 486, is the only reported case in which the rule was discussed within this jurisdiction since 1801. The case of *Daniel* v. *Whartenby*, in 17th Wallace, p. 639, came up on error from Delaware, and seems to be the only other case where the rule has been considered by the Supreme Court.

The CHIEF JUSTICE delivered the opinion of the Court:

The only question presented is whether the devise of the property to the daughter for life, "and *after* her death, the same to go to *her heirs, share and share alike*," is within the well known rule in *Shelley's Case*, 1 Rep., 93, 104.

That celebrated and long existing rule of law is, that where, in the same instrument, the ancestor takes an estate of freehold, with remainder mediately or immediately to his heirs, or heirs of his body, the word *heirs* is a word of limitation of the estate, and not of purchase; or, in other words, that such remainder vests in the ancestor himself; and the heirs, when they take, take by descent from him, and not as purchasers from the grantor or devisor. Thus, if the limitation be to his heirs in general, a fee simple is given to the ancestor; if to the heirs of his body, he takes a fee tail, according to the common law. This rule, it is said, was first established to prevent the inheritance from being in abeyance—from being tied up dependent upon future contingencies; and to facilitate the alienation of lands—reasons equally good and operative at this day as when the rule was first established. And the rule is equally applicable to the limitations of equitable as to legal estates; but the estate of the ancestor and the limitation to the heirs, must be of the same quality, that is, both must be legal or both equitable. The same words that create an estate in fee simple or an estate in fee tail in legal estates, will, when applied to an equitable estate, create an estate in fee simple or fee tail in that estate. This is an established principle, and it is founded upon the reason and policy, indeed the necessity, of preserving uniformity of the law in relation to the two kinds of estates in land; and the authorities maintain the principle without dissent. *Garth* v. *Baldwin*, 2 Ves., 646; *Jones* v. *Morgan*, 1 Bro. Ch., 206; *Brydges* v. *Brydges*, 3 Ves., 120, 125; 1 Perry on Trusts, Sec. 358; 1 Prest. on Estates, 263; 4 Kent Com., 215; *Croxall* v. *Shererd*, 5 Wall., 281. The only modification or qualification of the rule, in its application to equitable estates, is where a court of equity is called upon to direct the execution of an executory trust. In such case the court will apply the rule or not, as will best subserve the purposes and intent of the author of the trust.

The rule in Shelley's case has not met with favor in some of the States of our Union, and it has been, in those States,

either qualified or entirely abrogated by legislative enact-
ment. But in Maryland the rule has been in full force and
operation from the earliest settlement of the colony, as a rule
of property; and as the laws of that State, as they existed on
the 27th day of February, 1801, were continued in force over
this District, except where they were, or might thereafter
become, inconsistent or in conflict with the legislation of
Congress, the rule in Shelley's case is a part of the common
law of this District; and, while not disposed to enlarge or
give the rule any new application, this court has no power
whatever to depart from the rule, or in the least to restrict its
application. To do so would be to disrupt the ligaments of
title, and to introduce confusion, where, for the good of the
community, quiet and repose should be maintained.

In this case, the subject of devise was an equitable estate.
The testator had fully paid the purchase money, and he was
in possession, and manifestly supposed that he had a com-
plete legal title. But because of the mistake in the first con-
veyance, made in 1849, the mere legal estate remained in the
corporation of Georgetown College, and that corporation
was a constructive trustee of the legal title, without bene-
ficial interest in the estate. If, therefore, the devise to the
daughter invested her with the equitable fee in the estate, she
was entitled to call for the conveyance of the title to herself,
and the subsequent deed of conveyance made to her by the
corporation was proper, and she became fully clothed with
the legal estate. If, on the other hand, she took but a life
estate by the devise, the deed should have conveyed to her
but a life estate at law, with remainder to her heirs, according
to the terms of the will. The devise, however, operated only
on the equitable estate, and the estate devised to the daugh-
ter and that in remainder were of the same nature and
quality, and not different.

If this was a devise simply to the daughter for life, and
after her death to her heirs, of course there could be no
question of the application of the rule in Shelley's case, and
the daughter would take the equitable fee, and the heirs

could only claim by descent from the mother. Do the additional words, " share and share alike," have the effect of converting the devise into one for life to the daughter, with remainder to the heirs as purchasers? If this case was in an English court, it would not be open to argument. According to the most authoritative decisions there, the daughter would take an estate in fee; for it has long been the established doctrine in the English courts, that additional words such as those employed in the present devise, following the words *heirs or heirs of the body,* will not control the legal import of such words of limitation. Thus, in the leading case of *Jones* v. *Morgan,* 1 Bro. Ch., 206, the devise was to trustees to stand seized to the use of A *for life* without impeachment of waste; *after* his decease, to the use of the *heirs* male of his body, *severally, respectively, and in remainder* ; and it was held, after the fullest argument, that A took an estate tail. And so in the very celebrated case in the House of Lords, of *Jesson* v. *Wright,* 2 Bligh, 1, where the devise was to A *for life,* and *after* his decease *to the heirs of his body, share and share alike,* as tenants in common, it was held that A took an estate tail. And in the subsequent case of *Featherston* v. *Featherston,* 3 Cl. & Fin., 67, a case in the House of Lords, where the judges were called upon and gave their opinion, which was fully concurred in by the House, the question was as to the effect of words added to words of limitation, and the judges in their opinion, said: " Now we think the rule of construction laid down by Lord Alvanley, in his judgment in the case of *Poole* v. *Poole,* 3 Bos. & Pul., 627, being at once the result of the former cases, and being consistent with the principle of legal construction and of good sense, is the safe and correct rule to be applied in cases of this description, namely: ' That the first taker shall be held to take an estate tail where the devise to him is followed by a limitation to the heirs of his body, except where the intent of the testator has appeared so plainly to the contrary that no one could misunderstand it.' " The same principle is fully stated and acted on in many other

cases, both English and American. See *Bender* v. *Fleurie*, 2 Grant, 347; *McFeeley* v. *Moore*, 5 Ohio, 465; *King* v. *Beck*, 12 Id., 390; *Cooper* v. *Coursey*, 2 Cold., 416; *Fraser* v. *Chene*, 2 Mich., 81. It is certainly according to sound reason and correct logic, that where certain words of well defined or technical meaning are used, expressive of a general rule of law, and it be sought to curtail or restrain that meaning, it is incumbent upon the party thus contending to show clearly that the words bear the special meaning contended for; otherwise the general rule prevails. This is shown to be a settled rule of construction by the cases just cited, and to which many more might be added.

There is no doubt or question of the general proposition, that where an estate is devised to one for life, with remainder to his heirs, or to the heirs of his body, and there are words of explanation following the word heirs, from which it may be plainly collected that the testator meant to qualify or restrain the meaning of the word *heirs*, and not to use it in a technical sense, but simply as descriptive of the person or persons whom he intended to take after the death of the first devisee—in such case, the word heirs will operate as a word of purchase. That is the contention in this case, and the general proposition is supported by abundant authority, where the additional or explanatory words are sufficient to make it clear that the special intent, in respect to the particular devise, is paramount to the general intent of the testator.

In the cases where this rule has been most frequently applied, the devise has been to A for life, with a subsequent devise to the heirs general or special of A; and the testator has shown by explanatory words, a particular intent to give an estate for life only to A, and a general intent to give estates to all the descendants of A. And in such case, if the devise be construed so as to give effect to the particular intent, the first devisee will take an estate for life only, and the words heirs, or heirs of the body, must then operate as words of purchase, and not as words of descent. But there is always

found great difficulty in this mode of construction, for if the remainder be devised to the heirs of A, it must vest in the persons who answer to the description of such heirs general to A at the time of his death, whether such persons are heirs of the lineal or collateral line of A, the first devisee; and, in the meantime, the estate remains in contingency.

The cases upon this subject are very numerous, and it would be a difficult task to reconcile them all to any one general principle. Mr. Jarman, in his work on Wills, has given a very clear analysis of all the English cases, as well those referred to by the counsel for the complainants in this case, as many others, and the result of his review, even at the risk of an undue amplification of this opinion, we shall give in the words of the author. At page 144 of Vol. 3 of his work, he says:

" We next proceed to inquire into the effect of coupling a limitation to *heirs of the body* with words of modification importing that they are to take concurrently or distributively, or in some other manner inconsistent with the course of devolution under an estate tail, as by the addition of the words, *' share and share alike,'* or *' as tenants in common,'* or *' whether sons or daughters,'* or *' without regard to seniority of age or priority of birth.'* In such cases the great struggle has been to determine whether the superadded words are to be treated as explanatory of the testator's intention to use the term *heirs of the body* in some other sense, and as descriptive of another class of objects, or are to be rejected as repugnant to the estate which those words properly and technically create. It will be seen by an examination of the following cases, that, after much conflicting decision and opinion, the latter doctrine has prevailed, and it seems to stand on the soundest principles of construction. Those principles were violated, it is conceived, in permitting words of a clear and ascertained signification to be cut down by expressions from which an intention equally definite could not be collected. The inconsistent clause shows only that the testator intended the heirs of the body to take in a man-

ner in which, as such, they could not take; not that persons
other than heirs were meant to be the objects. To make
expressions of this nature the ground of such an interpreta-
tion is to sacrifice the main scope of the devise to its details.
The courts have, therefore, wisely rejected the construction
which reads heirs of the body with such a context as mean-
ing *children*, and thereby restricts the testator's bounty to a
narrower range of objects; for, it will be observed, that al-
though children are included in heirs of the body, yet the
converse of the proposition does not hold, for an estate tail
is capable of transmission through a long line of objects
whom a gift to the children would never reach (as grand-
children and more remote descendants); to say nothing of the
difference in the *order* of its devolution. This rule of con-
struction is supported by a series of decisions, commencing
from an early period, and sufficiently numerous and authori-
tative to outweigh any opposing decision and *dicta* which
can be adduced."

And if such be the rule of construction in cases where the
devise in remainder is to the heirs of the body of the first
devisee, *a fortiori* should the same rule of construction
apply in such case as the present, where the devise is to the
heirs general of the first devisee. In such case the word
heirs is of much larger and more comprehensive import, and
hence more difficult to restrain to mean children or even
lineal descendants. Suppose the first devisee had died with-
out issue; or suppose, instead of two children, she had had
three, two of whom died in her lifetime, one leaving two
children and the other three—in whom would the remainder
have vested in the first instance put? or how divided in the
second? If the person within the description of heirs take
as purchasers, they would take *per capita*; but it would be
quite unlikely that the testator intended, in the case put, that
the estate should be divided equally. While, on the other
hand, if the heirs general can claim only as heirs by descent
from the mother, the first devisee, the words, " share and
share alike," would be subject to no very strained construc-

tion to make them conform to the rules of partition ,as pre-
scribed by the Statute of Descents.   By the Maryland·act to
direct descents, of 1786, ch. 45, in force in this District, the
land descends to any child or children and their descendants,
if any, equally; and if there be no child or descendants of the
intestate, and the land be acquired by purchase, it descends
to the brothers and sisters of the intestate of the whole
blood, and their descendants in equal degree, equally.   But
however this may be, according to a settled rule of construc-
tion, these words, " share and share alike," following the
word *heirs*, are not effective or of sufficient import to change
and control the legal meaning of the preceding word of limi-
tation.  *Jones* v. *Morgan, supra*; *Jesson* v. *Wright, supra*;
*Poole* v. *Poole, supra*; *Jordan* v. *Adams*, 9 C. B. (N. S.), 483,
497; *Clarke* v. *Smith*, 49 Md., 106, 118.

It has, however, been argued for the complainants, that
this was a case of an executory trust, and that it is a settled
principle that the rule in Shelley's case does not apply in cases
of executory trusts.   The principle stated may be conceded,
but was this an executory trust?   An executory trust, as we
understand it, is where a trust is raised or created either by
stipulation or direction, in express terms or by necessary
implication, to make a settlement or conveyance to uses or
upon trusts which are simply indicated but not finally de-
clared by the instrument containing the stipulation or direc-
tion; and the form and limitations of the settlement or trusts
are subsequently directed by the court.   Smith on Execu-
tory Interests, annexed to Fearne, Sec. 489.   This is sub-
stantially the definition given by Lord Eldon, in the case of
*Jervoise* v. *Duke of Northumberland*, 1 J. & W., 539,
where he says, that is an executory trust, where the testator
has directed something to be done, and has not himself, ac-
cording to the sense in which the court uses these words, com-
pleted the devise in question; and in such case the court has
been in the habit of looking to see what his intention was;
and if what he has done amounts to an imperfection, with
respect to the execution of that intention, the court inquires

what it is itself to do, and it will mould what remains to be done so as to carry that intention into execution. But there is no such imperfect declaration or direction as to the trust in this case; indeed, no declaration or direction as to the execution of the trust at all. The trust here was purely constructive; and the truth is, the testator was not aware, as we may well infer, when he made his will, that the legal title was outstanding. There is no foundation, therefore, for the contention that there was an executory trust for execution by the court.

It is next contended that this is a devise to the daughter for life, "to hold as her separate estate, free from the control of her husband; and that such an estate is entirely different in quality from the common law legal estate which would go to the heirs." But, as we have already seen, the devise here, both for life and in remainder, was of the same equitable estate. There is, therefore, no difference in the nature and quality of the estate devised. But an estate, either legal or equitable, in real or personal property, may be acquired by a married woman, to her separate use, by gift, devise, or bequest, and that without the intervention of trustees; and where the legal estate devolves on the husband, or to the extent that any interest may vest in him as husband, he will be decreed to be trustee, as to that interest, for his wife; but he holds as trustee *pro tanto* only. The separate use in land, it is true, before the act of Congress of the 10th of April, 1869, relating to the District of Columbia, was created by deed or devise, in such terms as expressly excluded the marital rights of the husband, and placed her, in respect of that property, exactly in the condition of a *feme sole*; and as this separate use was the invention of a court of equity, it remained subject to the control of that jurisdiction exclusively. But the separate use is distinct from the estate vested in the woman, and it in no manner alters the nature or quality of the estate; nor did it in any manner interfere with the application of the rule in Shelley's case, in the execution of the limitation to the heirs in the married woman as

ancestor, and devisee of the preceding freehold estate. This was so held expressly in the case of *Douglas* v. *Congreve*, I Beav., 59, 72. And as to the nature and extent of the separate use, as enforced by courts of equity, see the cases of *Woodmeston* v. *Walker*, 2 Russ. & M., 197, and *Tullett* v. *Armstrong*, 4 Myl. & Cr., 377, 393.

Upon the whole, this court is clearly of opinion that the devise in question to the daughter, Margaret Sims, was of an equitable fee simple estate, and having the right to call for the conveyance of the legal title to the property devised, the deed by the defendant corporation invested her with the legal title, and consequently the complainants have no ground for the claim made by them, and therefore their bill was properly dismissed by the court below. The decree appealed from must be affirmed, with costs to the defendant.

*Affirmed.*