**Vivian Magdalene SIMMONS**
**and**
**Jean Veronica Queen, Plaintiffs,**

v.

**Theresa V. ROSEMOND, Yvonne S. McKinney, Deborah M. Simmons, and Roland Arthur Queen, Defendants.**

**Civ. A. No. 3506-62.**

United States District Court
District of Columbia.

Nov. 5, 1963.

Rex K. Nelson, Washington, D. C., for plaintiff Vivian Magdalene Simmons.

Stanley M. Dietz, Washington, D. C., for plaintiff Jean Veronica Queen.

Martin J. Kirsch, Washington, D. C., guardian ad litem for infant defendants, Deborah M. Simmons and Roland Arthur Queen.

HOLTZOFF, District Judge.

This case constitutes a graphic demonstration of the observation made by Mr. Justice Holmes that, "The history of what the law has been is necessary to the knowledge of what the law is".[1] To arrive at a correct solution of the problem which now confronts this Court, it is desirable and helpful to revert to a brief history of the Rule in Shelley's case. This action is brought for the construction of a will. As only a question of law is presented, all parties, who have appeared, have filed motions for summary judgment. The primary question to be determined is whether each of the plaintiffs takes an estate for life or an estate in fee simple, in certain real property devised to them.

The Court is here concerned with the will of Sovella Brown. By the first paragraph the testatrix devised to her granddaughters, Theresa Simmons (Rosemond), and Yvonne S. Simmons (McKinney) certain real property as tenants in common "in fee simple"; by paragraph 2, she gave to her daughter, Vivian M. Simmons, certain real estate "in fee simple"; by paragraph 3, she left another parcel "in fee simple" to her granddaughter, Jean Veronica Queen (Butler); by paragraph 4, she devised still another parcel to Vivian M. Simmons "in fee simple". It should be observed that in each instance the gift was made expressly "in fee simple".

Paragraph 5 of the will, which is the provision in litigation, reads as follows:

"Item No. Five: All of my real estate, together with the improvements thereon located at 304 Virginia Avenue, S. E., Washington, D. C., I give, devise and bequeath to Vivian M. Simmons and to Jean Veronica Butler, share and share alike, provided however, that should the said Jean Veronica Butler die without issue living at the time of her death, then and in that event her share of this property is to go to Vivian M. Simmons absolutely and in fee simple; but should the said Jean Veronica Butler die leaving issue surviving her, then and in that event the interest of the said Jean Veronica Butler in and to this property shall descend to her issue; the share of the said Vivian M. Simmons to descend, per capita, and not per stirpes to the children of the said Vivian M. Simmons upon her death."

This provision may be simplified and summarized as follows. The testatrix devised certain real property located in Washington, D. C., to her daughter Vivian M. Simmons, and her granddaughter Jean V. Queen (Butler), share and share alike. It was further provided that if the granddaughter died without issue living at the time of her death, her share should pass to Vivian M. Simmons absolutely and in fee simple; but should the granddaughter die leaving issue surviving her, her interest should descend to her issue. The testatrix also directed that the share of Vivian M. Simmons should descend upon her death to her children, *per capita* and not *per stirpes*. It should be noted that the first clause in devising the property to Vivian M. Simmons and to Jean V. Queen (Butler) share and share alike, does not expressly indicate the type of estate that each of them is to receive. The question to be decided is whether each of these two beneficiaries took an estate for life, or an estate in fee simple.

At common law if one conveyed or devised real property to another without further specification, the grantee or devisee received a life estate. In order to create an estate in fee simple, it was necessary to add the words "and his heirs" to the grant. In other words, a conveyance or devise to A vested in him only an estate for life. In order to give an estate in fee simple, it was essential to add words of inheritance, and the grant had to read "to A and his heirs". In the case of wills, it was permissible instead to give property to A "forever", or to A "in fee simple". Any one of such

1. Holmes, "The Common Law", p. 37.

provisions would have brought into being an estate in fee simple.[2] This technical requirement was, however, abandoned by Section 502 of the 1901 District of Columbia Code (D.C.Code, 1961 ed. Sec. 45–201), which reads as follows:

"Sec. 502. *Interpretation.*—No words of inheritance shall be necessary in a deed or will to create a fee simple estate; but every conveyance or devise of real estate shall be construed and held to pass a fee simple estate or other entire estate of the grantor or testator, unless a contrary intention shall appear by express terms or be necessarily implied therein."

Thus, under the law as it has existed in the District of Columbia ever since the adoption of the 1901 Code, it is no longer necessary to use words of art, such as "and his heirs" or "in fee simple", or any similar phrase, in order to create an estate in fee simple. A conveyance or devise to A without anything more, is construed as granting an estate in fee simple, unless the intention of the parties appears to be to the contrary.

Another doctrine that is germane to the issues in the instant case requires more comprehensive and thorough discussion. It is known as the Rule in Shelley's case, Wolfe v. Shelley (1579–1581) 1 Co.Rep. 93, 76 English Reports 206, 208. That decision comprised several points, but it became a landmark in the law of real property principally because of the doctrine enunciated by it to govern the interpretation of conveyances. The document construed by the Court created the following estate:

"To the use of the said Edward Shelley for the term of his life * * * and after his decease to the use of Mr. Caril and others for 24 years, and after the said 24 years ended, then to the use of the heirs male of the body of the said Edward Shelley lawfully begotten, and of the heirs male of the body of such heirs male lawfully begotten; and for de-

fault of such issue, to the use of the heirs male of the body of John Shelley."

The case was originally argued before the Court of King's Bench and was then referred to the Lord Chancellor, who assembled all of the Justices of England to hear a reargument. It was finally concluded that Edward Shelley took an estate in fee tail. In the course of the lengthy discussion, it was stated, 1 Co.Rep. 104, 76 Eng.Rep. 199, 234:

" * * * when the * * * ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail; that always in such cases, 'the * * heirs' are words of limitation of the estate, and not words of purchase * * * So inasmuch as in this case Edward Shelley took an estate of freehold, and after an estate is limited to his heirs male of his body, the heirs male of his body must of necessity take by descent, and cannot be purchasers; * * * "

To simplify and paraphrase the rule in modern phraseology, a grant to A and his heirs vests an estate in fee in A, rather than a life estate in A and remainder in his heirs. So, too, a grant to A for life and remainder to his heirs, would give an estate in fee simple to A rather than an estate for life with remainder to his heirs.

Coke on Littleton, Section 578, p. 319, formulates this principle as follows:

"Here it appeareth, that where the ancestor taketh an estate of freehold, and after a remainder is limited to his right heirs, that the fee simple vesteth in himself, as well as if it had been limited to him and his heirs; for his right heirs are in this case words of limitation of estate, and not of purchase."

Two centuries later this doctrine was reiterated in another leading case,

---

2. Blackstone, Ehrlich Ed. p. 177.

Perrin v. Blake, 4 Burrow's 2579, 98 Eng. Rep. 355. There the rule was epitomized as follows:

" * * * when the ancestor, by any gift, devise, or conveyance, takes an estate for life, with remainder mediately or immediately to his heirs, in fee or in tail; the word *heirs* is a word of *limitation;* and the estate of inheritance shall *vest in the ancestor;* and the express limitation for life is of no effect." (Emphasis original.)

In order to trace this rule to the District of Columbia, it is necessary to refer first to the law of Maryland. This doctrine was accepted and applied by the courts of that State as part of the common law. Thus in Horne v. Lyeth (1815) 4 Harris & Johnson 431, 433, the Court construed a provision of a will by which the testator devised to his daughter Catherine "the house and lot whereon I now live * * * during her natural life and after her decease * * to the heirs of my said daughter Catherine." In accordance with the Rule in Shelley's case, the Court held that Catherine acquired an estate in fee.

In Ware v. Richardson (1853), 3 Md. 505, the Rule in Shelley's case was discussed at length, and the Court referring to Horne v. Lyeth, supra, stated (4 Harris & Johnson p. 545) that, "The rule with its qualifications must * * * prevail as a part of our system of real law, because it has been fully recognized and adopted as the settled law of Maryland". While the rule was held inapplicable to the facts of that case, nevertheless, its existence and vitality were emphatically recognized.

In Dickson v. Satterfield (1880) 53 Md. 317, 320, the Rule in Shelley's case was again applied. It was held that a devise to the testatrix's cousin, Elizabeth Baynard, of the residence of the testatrix's father "during her life" and in case of her death without issue to a specified charity, and if she died without a will to Sarah Anne Warren and her heirs forever, created a fee simple and not a life estate in Elizabeth Baynard.

When the District of Columbia was carved out of the State of Maryland, the common law was by express enactment adopted as part of the law of this jurisdiction. It was necessarily the common law as known and understood in Maryland.[3] Accordingly, the Rule in Shelley's case became a part of the common law prevailing in the District of Columbia.

Thus in Sims v. The Georgetown College, 1 App.D.C. 72, 79–80, Chief Justice Alvey of the Court of Appeals wrote as follows:

"The rule in Shelley's case has not met with favor in some of the States of our Union, and it has been, in those States, either qualified or entirely abrogated by legislative enactment. But in Maryland the rule has been in full force and operation from the earliest settlement of the colony, as a rule of property; and as the laws of that State, as they existed on the 27th day of February, 1801, were continued in force over this District, except where they were, or might thereafter become, inconsistent or in conflict with the legislation of Congress, the rule in Shelley's case is a part of the common law of this District; and, while not disposed to enlarge or give the rule any new application, this Court has no power whatever to depart from the rule, or in the least to restrict its application. To do so would be to disrupt the ligaments of title, and to introduce confusion, where, for the good of the community, quiet and repose should be maintained."

Again, it was said in DeVaughn v. DeVaughn, 3 App.D.C. 50, affirmed sub

---

3. D.C.Code, 1901 Ed.; Sec. 1, Act of February 27, 1801, Ch. XV, 2 Stat. 103; Linkins v. Protestant Episcopal Cathe- dral Found, 87 U.S.App.D.C. 351, 354, 187 F.2d 357, 28 A.L.R.2d 521.

nom. DeVaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827, that the Rule in Shelley's case was part of the jurisprudence of the District of Columbia.

A tendency developed in this country early in the 19th Century to find methods of escaping from the inflexibility and rigidity of the rule, because it tended at times to defeat the intention of the parties. This was especially true in connection with the construction of wills.[4] Many States, one by one, gradually abrogated the rule by legislation.[5] One of the States to do so at an early date was Tennessee, which followed that course in 1851. By Chapter 91 of the Acts of the Tennessee Legislature enacted on January 26, 1852, it was provided as follows:

"That where a remainder shall be limited to the heirs or heirs of the body of a person to whom a life estate in the same premises shall be given the persons who, on the termination of the life estate, shall be heirs, or heirs of the body of such tenant, shall be entitled to take as purchasers by virtue of the remainder so limited to them." [6]

The courts of Tennessee construe this section as abolishing the Rule in Shelley's case, Williams v. Williams, 57 Tenn. 566, 568–569; Manhattan Savings Bank & Trust Co. v. Bedford, 161 Tenn. 187, 30 S.W.2d 227, 228.

As will appear later, the Rule in Shelley's case was not abolished in the District of Columbia until 1901. This consummation had an obscure but interesting history, much of which has to be pieced together from isolated bits of material, and to some extent to be based on surmises. In 1863 the Supreme Court of the District of Columbia was established. The Act creating the Court authorized the President to appoint a suitable person to revise and codify the laws of the District of Columbia.[7] President Lincoln designated the Clerk of the newly created tribunal, Mr. R. J. Meigs, who was a Tennessee lawyer said to have been thoroughly trained in the common law. One may surmise that Mr. Meigs was familiar with the Tennessee statute to which reference has just been made. A proposed Code was drafted and printed in 1864, apparently by him, which contained the following provision:

"When a remainder shall, by deed or will, be limited to the heirs, or heirs of the body of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs, or the heirs of the body of such tenant for life, shall be entitled to take as purchasers, by virtue of the remainder so limited to them."

It will be observed that this provision is practically identical, word for word, with the parallel provision of the 1852 enactment of the Tennessee legislature. Moreover, the footnote to the proposed provision refers to the Tennessee statute. It is a reasonable inference that Mr. Meigs, who apparently drafted the proposed Code, copied this section from the Tennessee Act.[8]

---

4. See note in 25 Washington Law Reporter (1897) p. 278.

5. See Daniel v. Whartenby, 17 Wall. 639, 642, 21 L.Ed. 661.

6. Acts of the State of Tennessee for the years 1851–1852 p. 113.

7. Act of March 3, 1863, Sec. 17, 12 Stat. 765.

8. The source for these references to the activities of Mr. Meigs is a speech made by Mr. Justice Walter S. Cox of the Supreme Court of the District of Columbia, before the Columbia Historical Society in 1898. A printed copy of this speech is to be found in the Law Division of the Library of Congress. Extracts from it are also contained in the historical introduction to the District of Columbia Code, 1961 Ed. p. XII. The proposed Code, which apparently was drafted by Mr. Meigs, but never presented to Congress, is out of print. A copy is found in the Law Division of the Library of Congress. There appears to be no record of anything further being done in connection with the proposed

In 1872 a legislative commission appointed for that purpose prepared a proposed revision of all statutes in force in the District of Columbia. This compilation was submitted to the House of Representatives on December 19, 1872 (H.Mis.Doc.No. 25, 42d Cong. 3d Sess.) This attempt to revise and codify the statutory laws of the District of Columbia likewise proved abortive. No action was taken on it. Part II, Title I, Chapter I, contained the following provision (p. 252):

> "When lands are given by deed or will to any person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall be construed to vest an estate for life only in such first taker and a remainder in fee-simple to his heirs."

If it had become law, it obviously would have abrogated the Rule in Shelley's case.

Another attempt to abolish it was made in 1879. Pursuant to a Congressional mandate,[9] a proposed code of civil law and procedure for the District of Columbia was drafted under the direction of the Attorney for the District of Columbia. It was transmitted to Congress on December 3, 1879, by the President of the Board of Commissioners of the District of Columbia (Senate Mis. Doc. No. 12, 46th Cong. 2d Sess.). This endeavor likewise did not come to fruition and no action appears to have been taken on the proposal. It also contained a provision which would have done away with the Rule in Shelley's case (Sec. 593, pp. 64–65):

> "When a remainder is limited to the heirs, or heirs of the body, of a person to whom a life estate in the same property is given, the persons who, on the termination of the life estate, are the successors or heirs of the body of the owner for life, are entitled to take by virtue of the remainder so limited to them, and not as mere successors of the owner for life."

The series of efforts to codify the statutory law of the District of Columbia came to a successful culmination in 1901 after about forty years of frustration. A code of law for the District of Columbia was finally enacted by the Congress on March 3, 1901.[10] It is generally known as the "1901 Code". Its draftsmen did not limit their task to organizing, classifying and codifying the numerous statutory enactments relating to the Nation's Capital that had been passed at various times. In addition they included some new provisions that changed the rules of the common law. Among them were several relating to the law of real property. We have already referred to one of them, which abolished the common law rule that express terms of inheritance were indispensible in order to create an estate in fee simple. Another affected the Rule in Shelley's case.

■ Section 1027 of this Code, which is now found in D.C.Code, 1961 Ed. Sec. 45–203, reads as follows:

> "Sec. 1027. *Remainder to Heirs.*—Where a remainder shall be limited to the heirs or heirs of the body of a person to whom a life estate in the same premises shall be given, the persons who, on the termination of the life estate, shall be the heirs or the heirs of the body of such tenant for life shall be entitled to take in fee simple as purchasers by virtue of the remainder so limited."

Under this provision if one grants an estate to A for life, remainder to his heirs, A receives a life estate and his

---

Code. It was not enacted. It should be noted that this opinion does not refer to earlier efforts to codify the statutory laws of the District of Columbia, because they did not affect the Rule in Shelley's case.

9. Act of June 11, 1878, Sec. 12, 20 Stat. 108; Act of March 3, 1879, Sec. 3, 20 Stat. 405.

10. Act of March 3, 1901, 31 Stat. 1189–1436.

heirs take a fee simple upon his death. By necessary implication, the result was to abrogate the Rule in Shelley's case, for under that doctrine an estate in fee simple would have vested in A.

That such was the effect of this enactment was contemporaneously understood by the legal profession. Thus the Washington Law Reporter for January 23, 1902 (30 Washington Law Reporter 53) states: "The effect of this provision is to abolish the rule in Shelley's case." Strange as it may seem, this Section does not appear to have been construed or even discussed by the Court of Appeals for this Circuit. Only very recently, however, one of the judges of this Court expressly recognized the 1901 Code as having repealed the Rule in Shelley's case.[11]

Thus the legislation of 1901 liberated the law of the District of Columbia in respect to conveyances from two of the shackles by which it had been fettered. It struck down two rules of construction, which previously had been regarded as basic: the requirement of the use of terms of inheritance or other characterization, in order to create a fee simple estate; and the Rule in Shelley's case. We are now guided solely by the canon that deeds and wills must be construed in accordance with the intention of the parties insofar as it can be discerned from the text of the instrument.

Reverting now to paragraph 5 of the will under consideration, the devise by the testatrix to her daughter Vivian M. Simmons and to her granddaughter Jean Veronica Queen Butler, share and share alike, if it stood alone, could be considered as having created an estate in fee simple in each of the two ladies. This sentence, however, proceeds to direct the disposition of the property after the death of the first two devisees, namely, that upon the death of the granddaughter, her share should pass to Vivian M. Simmons in

fee simple if she died without issue, but if she died leaving issue, her interest should descend to her issue. It was also provided that upon the death of Vivian M. Simmons her share should descend to her children *per capita*. Thus it was the manifest intention of the testatrix to make certain dispositions of the property to take effect upon the death of the first two devisees. This purpose cannot be effectuated unless the devise to the two ladies were construed to create life tenancies only. This view is fortified by the significant fact that in other paragraphs of the will the testatrix used the term "in fee simple" whenever she intended to create an estate of that kind. In other words she, or the draftsman of the will, had in mind the desirability, if not the necessity, of using the term "in fee simple" when it was desired to bring into being an estate of that type.

The construction of this paragraph of the will is of importance at this time, because the Court was informed by counsel at the oral argument that the property to which it refers has been taken by eminent domain, and compensation therefor has been paid into the Registry of the Court. It is necessary to interpret the will in order to make a proper distribution of this fund.

Accordingly, the Court concludes as follows:

1. That Vivian M. Simmons and Jean Veronica Queen Butler each took a life estate in an undivided one-half interest in the property;

2. That defendant Roland Arthur Queen, the infant son of Jean Veronica Butler, takes a vested remainder in his mother's share, to come into possession at his mother's death. This remainder is subject to being divested if he predeceases his mother; and is subject to being opened up if his mother has additional issue who will survive her, in which event the remainder interest will pass to all of the surviving

11. American Security & Trust Co. v. Cramer, D.C., 175 F.Supp. 367, 373, opinion per Youngdahl, J.

issue share and share alike. Vivian M. Simmons has a contingent remainder interest in this one-half of the property to vest only in the event that Jean V. Butler dies without issue.

3. That the children of Vivian M. Simmons, i. e., the plaintiff Jean V. Butler and defendants Theresa Rosemond, Yvonne S. McKinney and Deborah M. Simmons, take a vested remainder share and share alike in her share, to come into possession at their mother's death. The class is subject to being opened up if the mother should have additional issue surviving her. The remainder interest of each child is subject to being divested if the child predeceases the mother.

Counsel may submit an order in accordance with this ruling.