Charles E. JOYNER, Appellant,

v.

ESTATE OF Frances W. JOHNSON, Appellee.

No. 09–CV–205.

District of Columbia Court of Appeals.

Submitted May 18, 2010.
Decided Feb. 9, 2012.

---

Ronald C. Jessamy, Washington, DC, for appellant.

Roger Simmon, Frederick, and Jeffrey D. Katz, Bethesda, MD, for appellee.

Before BLACKBURNE–RIGSBY and THOMPSON, Associate Judges, and RUIZ, Associate Judge, Retired.*

RUIZ, Associate Judge, Retired:

Charles E. Joyner appeals the trial court's determination that a disputed piece

---

* Judge Ruiz was an Associate Judge of the Court at the time of submission. Her status changed to Associate Judge, Retired, on September 1, 2011.

of residential property was jointly owned by appellant and the Estate of Frances W. Johnson ("the Estate") as tenants in common. Appellant argues that the trial court erred in (1) finding that the Estate owned half of the property, and (2) permitting the Estate's witness, Jacob Thomas, to present expert testimony on the proper interpretation of a deed. For the reasons that follow, we affirm the judgment of the trial court.

## I. Statement of Facts

The property in dispute is a residence located at 1216 42nd Street, N.E., Washington, D.C., that was purchased by Hattie Mae Williams on April 13, 1945. Mrs. Williams executed a last will and testament that bequeathed her interest in the property to her two daughters, Frances (who after a subsequent remarriage, became Frances Johnson) and Marie (appellant's late wife). In 1964, Mrs. Williams died, and the property was transferred to her daughters, Frances and Marie, in accordance with her will.

Marie and appellant married in 1953. On June 2, 1977, after she had inherited her one-half interest in the property, Marie executed a deed that conveyed her half-interest in the property to herself and her husband (appellant Joyner) as tenants by the entirety.

On October 26, 1995, Frances executed a deed for the property. The deed identifies Frances as the "grantor" as well as the "grantee," and states that "the party of the first part conveys to the party of the second part all she has in improvements, rights, pr[i]vileges, and appurtenances" in the property Frances and Marie had inherited from their mother. The deed expressly states that no consideration is involved. The deed also recognized the 1977 deed in which Marie had transferred her half-interest in the property "to herself and her husband [appellant Joyner] as tenants by the entireties." The deed was signed by Frances and by her sister Marie, who is identified as a "witness." The deed was recorded on November 3, 1995.

Frances and Marie each executed wills, in 2004 and 1988, respectively. They granted to each other a life estate in the property. Upon the death of her sister Frances, Marie's will left her interest in the property to her husband, appellant Joyner. Upon Marie's death, Frances's interest would go to her children.

From 1962 until 2004, Frances, Marie, and appellant all resided on the property. Frances lived primarily on the lower level of the home; Marie and appellant resided on the second floor.

In 2004, the relationship between appellant and Frances soured for reasons that are not developed in the record. Frances and her children no longer had access to the house. Appellant changed the locks on the doors, making it impossible for Frances or her children to enter the home. In November 2004, Frances, who was then living at a local nursing facility, sent a letter to appellant requesting access to the property. By the end of 2004, both Frances and Marie had passed away, and appellant became the sole resident of the property.

According to a title abstract admitted into evidence, on January 22, 2007, appellant granted an Adjustable Rate Home Equity Conversion Deed of Trust on the property to Financial Freedom Senior Funding Corporation,[1] as collateral for a

---

1. The trial court noted that Financial Freedom was a wholly owned subsidiary of Independent National Mortgage Corporation ("Indy Mac"). The trial court added that

"Indy Mac was an aggressive, risk-taking, sub-prime lender, which failed and was seized

loan of $390,000.[2] The deed was recorded on February 26, 2007.

On June 1, 2007, the Estate of Frances W. Johnson filed suit in the Superior Court against appellant seeking a partition by sale of the property. At trial, Jacob Thomas was qualified as an expert witness over appellant's objection. Thomas, a senior title examiner for Potomac Title Corporation, had prepared a title report on the property, that was introduced at trial. Thomas testified that the 1995 deed confirmed Frances's 50% interest in the property. Appellant did not present an expert. He argued that the 1995 deed conveyed Frances's interest to him and Marie. In support, he testified that the Equity Conversion Deed executed in 2007 was for a "reverse mortgage" on the property, and presented an unsigned document ("ALTA Preliminary Title Report/Commitment to Insure") he said was prepared in connection with that mortgage. The document states that appellant "was the sole owner of the property," and that "[c]urrent owner(s) took title to subject property" in Frances's 1995 deed. The trial court noted in its findings that no evidence of an actual insurance policy or binder was introduced into evidence.

The trial court found that the deed executed by Frances Johnson in 1995 "confirm[ed]" her one-half interest in the property. Noting that the deed identifies Frances as both grantor and grantee, the trial court concluded that Frances had retained her half-interest in the property, and did not convey it to appellant and Marie. The trial court granted to her

Estate the right to partition by sale.[3] Appellant filed this timely appeal.

## II. The 1995 Deed

Appellant challenges the trial court's finding that the property is jointly owned by him and the Estate in equal shares as tenants in common. He argues that Frances's 1995 deed conveyed "all she has in improvements, rights, privileges and appurtenances" in the property to him and his wife Marie. Once Marie died, appellant then succeeded to her interests, whether as survivor of the tenancy by the entirety or through her will.

██ "In resolving an appeal from a non-jury trial, we may review both as to the facts and the law, but the judgment may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it." *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 101 (D.C.2007) (quoting *Crescent Props. v. Inabinet*, 897 A.2d 782, 789–90 (D.C.2006); D.C.Code § 17–305(a) (2001)). We interpret deeds as we do contracts, i.e., under the "objective law of contracts." *Dyer v. Bilaal*, 983 A.2d 349, 354 (D.C.2009) (internal quotations omitted). This means that "the written language embodying the terms of an agreement will govern the rights and liabilities of the parties [regardless] of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite undertaking, or unless there is fraud, duress or mutual mistake." *Id.* at 354–55 (quot-

by the Federal Deposit Insurance [Corporation] on July 11, 2008."

**2.** The court noted that, according to appellant, he received a loan in the amount of $187,000.

**3.** The trial court issued an order staying the judgment upon appellant's filing of a

$200,000 bond. The parties have informed the court that appellant has not posted the bond. Appellee filed a letter with the court on December 7, 2011, requesting that the appeal be expedited, noting that "appellant's filing of the appeal has effectively stayed the case." With the issuance of this opinion, we grant appellant's request for expedition.

ing *DSP Venture Group, Inc. v. Allen*, 830 A.2d 850, 852 (D.C.2003) (alteration in original)). Thus, "[i]f a deed is unambiguous, the court's role is limited to applying the meaning of the words ... but if it is ambiguous, the parties' intention is to be ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction." *Foundation for the Pres. of Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C.1994) (internal citation omitted). "[A] contract is ambiguous when, and only when, it is, or the provisions in controversy are, reasonably or fairly susceptible of different constructions or interpretations, or of two or more different meanings, and it is not ambiguous where the court can determine its meaning without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Washington Props., Inc. v. Chin, Inc.*, 760 A.2d 546, 548 (D.C. 2000) (internal quotations omitted). "The question of whether a contract is ambiguous is one of law to be determined by the court." *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983).

The 1995 deed reads in its entirety as follows:

> This DEED is made this 26th day of October 1995, by and between *grantor Frances W. Johnson,* whose interest in the below described realty vested in her by will on June 12, 1963, jointly with her sister Marie W. Joyner, who conveyed her interest in said realty on June 2, 1977 to herself and her husband Charles E. Joyner as tenants by the entireties, said *grantor Frances W. Johnson retaining an equal share of said realty in herself;* and the *grantee Frances W. Johnson,* said *grantee* receiving *alone* a 50–percent share in fee simple absolute in the subject realty, the *remaining* 50–percent still vested in Marie W. Joyner and Charles E. Joyner.

> WITNESSETH, that in consideration of no dollars the party of the first part conveys to the party of the second part all she has in improvements, rights, privileges and appurtenances in the realty in the District of Columbia.

(emphasis added).

The Estate argues that Frances's 1995 deed was a "clarification deed," intended to confirm that Frances owned a 50% share of the property, and in support of that contention, relied on the plain meaning of the language used in the deed and presented the testimony of its expert witness, Jacob Thomas, at trial. Thomas opined that:

> The purpose of the deed it is believed to be as a clarification of ownership to the property since there was never a deed of conveyance and only a devising of the property from the will of Hattie Mae Williams back in 1963. This deed sets out the history of the property[:] that they had obtained it by the will with her sister. It mentioned the '77 deed where she [Marie] had conveyed it to herself and her husband as tenants by the entirety to her interest. And explains that Frances Johnson *retains her 50 percent interest in the property.* One could say that ... the purpose of the deed would be for clarification.

(emphasis added).

The trial court asked Thomas whether there is any basis for the view that appellant owns a 100% interest. Thomas replied in the negative, explaining that appellant owns a 50% interest in the property and Frances retained her 50% ownership interest in the property. Appellant asked Thomas, "the '95 deed you're talking about, the grantor and the grantee are the same, right?" Thomas responded that "the deed is between Frances Johnson and herself attesting to ... her interest in the property. The

deed is signed by both ... owners of the property. But is in essence ... attesting to her 50 percent interest."

■■ Appellant argues that the 1995 deed is ambiguous; we must determine *de novo* whether this is so. *Holland,* 456 A.2d at 814. To determine whether a contract is ambiguous, "we examine the document on its face, giving the language used its plain meaning." *Dyer,* 983 A.2d at 355 (quoting *Tillery v. District of Columbia Contract Appeals Bd.,* 912 A.2d 1169, 1176 (D.C.2006)); *see Foundation for the Pres. of Historic Georgetown,* 651 A.2d at 796 ("Deeds, like contracts, are 'construed in accordance with the intention of the parties insofar as it can be discerned from the text of the instrument.'" (quoting *Simmons v. Rosemond,* 223 F.Supp. 61, 67 (D.D.C.1963))).

The 1995 deed recites the history of ownership of the property in the family: that in 1963 the sisters inherited the property "jointly" from their mother, and that, in 1977, Marie transferred "her" interest to herself and appellant as tenants by the entireties. The deed identifies Frances as both the "grantor" and the "grantee," and states that the "party of the first part conveys to the party of the second part all she has in improvements, rights, privileges, and appurtenances," for no consideration. The deed expressly states that Frances "retain[s]" and "receive[s] alone a 50% share in fee simple absolute" with the "remaining 50–percent still vested in" Marie and appellant. Marie's signature is as a "witness," and she is not a party to the deed. To the extent appellant's name is mentioned, it is with reference to the historical fact that Marie conveyed her half-interest to him "as tenants by the entireties." Their names do not appear as grantees in the operative granting clause of the deed.

■ Read literally, the deed is a grant from Frances to herself (not Marie and appellant), and we cannot say that any of the terms in the deed is unclear, rendering the document ambiguous in the usual sense. *See Bragdon v. Twenty–Five Twelve Assocs. Ltd. P'ship,* 856 A.2d 1165, 1170 (D.C.2004) ("[A] court must honor the intentions of the parties as reflected in the settled usage of the terms they accepted in the contract, and will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." (internal quotations omitted)). This "homemade" document, as the trial court described it, however, is sufficiently outside the norm of the usual deed transferring property from one person to another, or (as in the case of Marie's 1977 deed) changing the form of ownership, that it is appropriate to look beyond the four corners of the document as a "guide," *Washington Props., Inc.,* 760 A.2d at 548, to ascertain whether extrinsic evidence supports or challenges a literal interpretation of the deed. Once contract interpretation takes into account extrinsic evidence, it is a question for the fact-finder and our review is limited to determining whether the fact-finder's interpretation is clearly erroneous or not supported by the evidence. *See Rastall v. CSX Transp., Inc.,* 697 A.2d 46, 51 (D.C.1997).

■ Appellant argues that the trial court was required to consider extrinsic evidence to determine Frances's actual intent when she executed the 1995 deed, and erroneously found that the lack of extrinsic evidence that the deed was intended to be a gift to Marie and appellant meant that, as the expert testified, it was intended to be a "clarification deed." Appellant also argues that the documents he presented concerning the reverse mortgage he obtained on the property should have been considered as evidence of his sole ownership of the property.

Even though the trial court thought the deed is not ambiguous, it considered ex-

trinsic evidence and found that it did not support that Frances intended to transfer her interest in the property to Marie and appellant.[4] The trial court reasoned that:

> The confluence of many facts indicate[s] that the expert testimony of Mr. Jacob Thomas must prevail, including the following facts: 1) Frances W. Johnson listed herself as both the grantor and grantee; 2) the signatories of the deed, Frances W. Johnson and Marie Joyner, expressly stated that no consideration had changed hands; 3) there was no evidence that a gift was made to anyone—no gift tax form in evidence and no such testimony proffered; 4) ... [Appellant], one of the purported beneficiaries of the 1995 so-called "gift" from Frances Johnson, was totally unaware of the 1995 deed until 2005, ten (10) years later ... 5) there was no evidence that Frances Johnson moved out of the property in the fall of 1995 to permit a new owner to take possession; 6) no evidence that any transfer tax of any nature was paid on the "alleged transfer" of the property on October 26, 1995; 7) no evidence [was] offered of the payment of any other transfer fee paid to record or signify the "alleged" transfer on October 26, 1995; and 8) utterly no writings by anyone other than Exhibit 1 [the 1995 deed], which "allegedly" references a transfer of title.

We cannot say that the trial court's finding is clearly erroneous or that the "confluence of many facts" it identified does not support its determination that Frances never intended to relinquish her interest in half of the property when she executed the 1995 deed. In particular, we agree with the trial court's observation that Frances con-

tinued to act as if she owned the property. In 2004, Frances executed a will in which she bequeathed a life estate in the property to her sister Marie, with the remainder to her children. As the trial court noted, "Frances Johnson could only limit the use of the Property if she believed she had an ownership interest." Appellant's argument that Frances's 1995 deed was intended to be a gift to him and his late wife, on the other hand, is at odds with the language of the deed and unsupported by extrinsic evidence showing that the parties thought or acted in a manner consistent with Frances's having transferred her own half fee simple interest in the property to Marie. As the trial court noted, appellant himself never claimed he owned all of the property when he probated his wife's estate and, instead, listed the property as jointly owned with "50% interest with sister as t/c [tenants in common]." Indeed, appellant testified he did not think he owned the property until 2005 when he "learned of a possible reverse mortgage pay-out by Indy Mac."

We disagree with appellant's contention that documentation in connection with the reverse mortgage supports an interpretation that the 1995 deed established him as sole owner of the property. That document, issued in 2006, says nothing about Frances's intent when she executed the 1995 deed more than a decade earlier. As the trial court noted, the document on which appellant relies is an unsigned and unauthenticated preliminary report, and there is no evidence of a final title report or insurance.[5] At best, it reflects one (possibly unreliable) lender's view that appellant wholly owns the property offered as collateral for the proposed loan. See note 1, *supra*.

---

**4.** According to the trial court, "[n]o evidence was admitted upon the record which corroborates the finding of any ambiguity in the 1995 deed."

**5.** The trial court left the record open for post-argument submissions to provide appellant further opportunity to present evidence of title, but nothing was provided.

■ Finally, appellant argues that the trial court erroneously disregarded his testimony that the reason Frances wanted to transfer her interest to Marie and appellant in 1995 was to avoid bringing the property into a new marriage. An appellate court, however, does not second-guess the credibility determination of the trial court when there is evidence to support it. *See Scott v. United States*, 953 A.2d 1082, 1094 (D.C.2008) ("In recognizing the jury's role in weighing the evidence, we will defer to its credibility determinations, as well as its ability to draw justifiable inferences of fact.") (internal quotations omitted). Appellant's testimony was disputed by another witness, Dr. Sharon Minor King, who is Frances's daughter and co-executor of the Estate. Moreover, as the trial court noted, a transfer to appellant "would be inconsistent with the stated goal" of protecting the property from Frances's new husband to keep it in the family of "the blood heirs of Hattie Mae Williams." In short, appellant does not satisfy his heavy burden of showing that the trial court's finding was clearly erroneous or unsupported by the evidence at trial. *See Hinton*, 917 A.2d at 101. We, therefore, affirm the trial court's determination that the 1995 deed did not convey Frances's interest to appellant and his then-wife.

### III. Expert Witness

■ Appellant also contends that the trial court erred in permitting Jacob Thomas to testify as an expert witness for the Estate. Appellant complains that Thomas lacked the required credentials to be qualified as an expert witness because he did not have any professional licenses or advanced degrees relating to title work. The admission or exclusion of expert testimony is reviewed for abuse of discretion. *District of Columbia v. Anderson*, 597 A.2d 1295, 1299 (D.C.1991). The trial court has broad discretion in determining whether to admit expert testimony, and its "ruling either admitting or excluding such evidence will not be disturbed unless 'manifestly erroneous.'" *Green v. United States*, 718 A.2d 1042, 1050 (D.C.1998) (citing *Dyas v. United States*, 376 A.2d 827, 831 (D.C.1977) (internal quotations omitted)).

■ The well-established criteria for the admission of expert testimony in the District of Columbia are that: "(1) the subject matter must be so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman" and "(2) the witness must have sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth[.]" *Dyas*, 376 A.2d at 832 (internal quotations omitted). Expert testimony is not admissible if "the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert." *Id.* Generally, "we allow the introduction of expert testimony in situations where 'inexperienced persons are unlikely to prove capable of forming a correct judgment' upon the issue due to lack of study and knowledge of the subject matter." *United States v. Jenkins*, 887 A.2d 1013, 1021 (D.C.2005) (quoting *Frye v. United States*, 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923)).

■ Appellant challenges Thomas's qualifications as an expert, claiming that he lacks professional licenses or advanced degrees. However, an expert may be qualified by experience rather than academic training because "[s]cholarship is not a prerequisite for eligibility to testify as an expert witness; the relevant knowledge may be derived from professional experience[.]" *Jones v. United States*, 990 A.2d 970, 979 (D.C.2010) (internal quotations omitted); *see Lohrenz v. Donnelly*,

223 F.Supp.2d 25, 35–36 (D.D.C.2002) (noting that a person who has not previously testified as an expert and who is not published is not summarily barred from testifying as an expert witness if he has extensive experience in the field).

Here, Thomas testified that he was a professional title abstractor, and had been doing title work for ten years. He was trained by experienced superiors, and was supervised for the first four or five years of his employment before becoming the "fully qualified senior examiner" he was at the time of trial. Title work has comprised between 90 to 100% of his case load over the last eight years. During the course of his work, he has issued thousands of title searches and reports, none of which has ever been challenged.

On this record, we can find no reason to conclude that the trial court abused discretion in admitting Thomas as an expert witness; his knowledge, skills, experience, and training all established his qualifications as an expert witness. *See Jones,* 990 A.2d at 979.

\*       \*       \*

For the foregoing reasons, the judgment declaring that the Estate owns half of the property and granting the Estate's petition to partition the property by sale is

*Affirmed.*