**FOUNDATION FOR the PRESERVATION OF HISTORIC GEORGETOWN, Appellant,**

v.

**Gale ARNOLD, Appellee.**

**No. 93–CV–1157.**

District of Columbia Court of Appeals.

Argued Nov. 18, 1994.
Decided Dec. 15, 1994.

---

Richard B. Nettler, Washington, DC, for appellant.

L. Barrett Boss, Washington, DC, for appellee.

Before FERREN and FARRELL, Associate Judges, and GALLAGHER, Senior Judge.

FARRELL, Associate Judge:

This is an appeal from an order granting summary judgment to a property owner (Arnold) in a suit for declaratory and injunctive relief brought by appellant (the Foundation [1]) to enforce a Deed of Scenic, Open Space, and Architectural Facade Easement (hereafter the Easement). Granted to the Foundation in 1980 by a previous owner of the property, the Easement was binding on Arnold as a successor-owner. The Foundation argues that Arnold violated the Easement (1) by laterally enclosing the space between two former "doghouse-style" dormer windows on the sloped rear roof of the dwelling so as to create a single "shed dormer" window, and (2) by erecting a seasonal awning structure across the rear patio of the house. We affirm.

## I.

The parties' dispute concerns primarily two provisions of the Easement. The first, section 1, prohibited Arnold in relevant part from undertaking any

> construction, alteration, or remodeling or any other thing . . . on the subject premises which would affect either the exterior surfaces herein described, or increase the height, or alter the exterior facade . . . or the appearance of the building located thereon, insofar as it is depicted in the photograph attached hereto and incorporated herein as Exhibit A. . . .

1. *I.e.,* the Foundation for the Preservation of Historic Georgetown.

Section 1 again defined "[t]he exterior surfaces of improvements ... on the subject premises" as

> those depicted in the photograph attached hereto and incorporated herein as Exhibit A, being essentially those exterior surfaces of improvements on the aforesaid premises which are visible from 33rd Street, N.W. [the front of the house], in Old Georgetown, but in the event of uncertainty the exterior surfaces of improvements visible in the photograph in Exhibit A shall control.

The parties agree that the surfaces visible in the photograph (Exhibit A) are essentially those visible from the front of the house on 33rd Street. The Foundation, therefore, concedes that section 1 of the Easement does not prohibit the changes to the dwelling at issue here.

The Foundation relies, instead, on section 4 of the Easement, which provides that, with an exception not relevant here, "[n]o extension of the existing structure or erection of additional structures shall be permitted." The Foundation contends that Arnold's enclosure of the exterior space between the two dormer windows "extended" the house within the unambiguous meaning of this operative verb in section 4, and that even if "extension" were ambiguous as used in the section, the trial court erred in refusing to look to an appraisal document prepared contemporaneously with the grant of the Easement as proof that the parties intended to prohibit "density increases" to the interior space of the house such as the disputed enclosure modestly achieves. The Foundation makes similar arguments with respect to the patio awning.

## II.

The parties each claim that they were entitled to summary judgment. We must affirm the grant of summary judgment to Arnold if we conclude that there was no genuine dispute of material fact and that she was entitled to judgment as a matter of law. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C. 1983). Deeds, like contracts, are "construed in accordance with the intention of the parties insofar as it can be discerned from the text of the instrument." *Simmons v. Rosemond,* 223 F.Supp. 61, 67 (D.D.C.1963). *See Milligan v. Milligan,* 624 A.2d 474, 477 (Me. 1993). If a deed is unambiguous, the court's role is limited to applying the meaning of the words, *see Smith v. Smith,* 622 A.2d 642, 646 (Del.1993), but if it is ambiguous, the parties' intention is to be ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction. 26 C.J.S. *Deeds* §§ 82(a), 92; *see also Norken Corp. v. McGahan,* 823 P.2d 622, 626 (Alaska 1991) (court should resort to rules of construction only after failing to ascertain intent from deed and surrounding circumstances); *Heyen v. Hartnett,* 235 Kan. 117, 679 P.2d 1152, 1157 (1984) (absent extrinsic evidence of intent, rule of construction will apply to resolve ambiguity in deed).

The very most that can be said of section 4 favorably to the Foundation is that it is ambiguous,[2] as the trial judge recognized. "[E]xtension," which is not elsewhere defined in the Easement, could mean any exterior addition to the structure that—in the Foundation's language—adds interior space or "density" to the residence. But it could also mean an addition that (to use Arnold's terms) extends the footprint or envelope of the residence upward or outward in height, length, or width.[3] No other language

---

2. We are not altogether convinced that the section is ambiguous, though on this reading the result is no more favorable to the Foundation. In the granting clause, the deed grants the Foundation an easement in the real property and also in "the exterior surfaces of improvements located thereon." Each of the remaining provisions reflects the Foundation's interest in either the lot or the "exterior surfaces." Section 1 is arguably concerned with the second interest—the exterior surfaces of the improvements "visible from 33rd Street." Sections 2 through 7, by contrast, each

appear to address the parties' rights and obligations respecting the Foundation's interest in the lot itself. Read this way, section 4 is aimed principally at maintaining the lot, not the house, in its current condition and size; only outward encroachments onto the lot—which the shed dormer is not—are prohibited.

3. Interestingly, this was the claim made by the Foundation in interpreting the very different easement agreement at issue in *Bagley v. Foundation for the Preservation of Historic George-*

in the Easement eliminates this ambiguity. The Foundation points to the contemporaneous appraisal report as extrinsic evidence that the parties meant the former definition, but we agree with the trial judge that the report cannot serve to clarify the ambiguity. It was prepared solely by the grantor of the Easement, after execution of the deed, for the purpose of obtaining a federal tax deduction for a charitable donation. It therefore is not evidence of what the *parties* (grantor and grantee) understood the terms of the Easement to mean.[4] Moreover, even if it were admissible for that purpose, it does not resolve the ambiguity. For example, while the appraisal describes the Easement as barring a "height or density increase," the increase referred to is one resulting from an "extension . . . of the existing structure"—thus begging the question of what "extension" means.[5]

In short, the appraisal is not competent or "sufficient evidence," *Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980), requiring resolution by a trier of fact of the original parties' understanding of the term "extension." We therefore must look to rules of construction in deciding the effect of the ambiguity.

■ Dispositive of this case, in our view, is the well-recognized rule of construction that restrictions on land use should be construed in favor of the free use of land and against the party seeking enforcement. *See Moses v. Hazen,* 63 App.D.C. 104, 106, 69 F.2d 842, 844 (1934); *Belleview Constr. Co. v. Rugby Hall Community Ass'n,* 321 Md. 152, 582 A.2d 493, 495 (1990). The Foundation would limit application of this rule to restrictive covenants, as distinct from what it terms the negative easement in dispute here. But this distinction is vague and unconvincing, as *Moses, supra,* demonstrates. *See* 63 App.D.C. at 106, 69 F.2d at 844 ("the restrictive covenants on which appellants' case is built are no more than negative easements, or rights analogous to negative easements").[6] The cases on which the Foundation relies chiefly concern affirmative use easements, *e.g., Case v. Morrisette,* 155 U.S.App.D.C. 31, 475 F.2d 1300 (1973); *Fields v. District of Columbia,* 143 U.S.App.D.C. 325, 443 F.2d 740 (1971), as to which it is arguable that the grantee benefits most—or at least equally—from a rule favoring free use. That is not true in the case of covenants restricting the grantor's use of property.

■ In this case, moreover, the rule of free use coincides in the result it dictates with the additional rule of construction that ambiguities in a deed will be resolved against the drafter of the instrument, here the grantee-Foundation. *See* 26 C.J.S. *Deeds* § 82(e); *cf. Intercounty Constr. Corp. v. District of Columbia,* 443 A.2d 29, 32 (D.C.1982) (ambiguities in contract construed most strongly against drafter).

■ Applying rules of construction, then, we hold that the enclosure of the space between the two dormer windows, while it increased the "density" of the interior space modestly, did not violate the Easement because the shed dormer does not extend beyond the highest point or the length or width of the existing house. That is, it does not extend the four corners—the footprint or

---

*town,* 647 A.2d 1110 (D.C.1994), where the Foundation argued—and we agreed—that the addition to the structure made by Bagley "violated the easement by increasing the area (footprint) of the existing house." *Id.* at 1111.

4. Indeed, the author of the appraisal expressly disclaimed "responsibility for legal interpretations" of words in the Easement.

5. The appraisal's reference to a prohibited increase in "size" shares the same ambiguity.

6. *See also Reichert v. Weeden,* 190 Mont. 95, 618 P.2d 1216, 1219 (1980) (holding that covenant running with land created negative easement); *Bennett v. Charles Corp.,* 159 W.Va. 705, 226 S.E.2d 559, 563 (1976) ("Negative restrictive easements are basically restrictive covenants. . . ."). Not surprisingly, there are current proposals to merge the overlapping doctrines of easements, real covenants, and equitable equitable servitudes into a single law of servitudes. 7 THOMPSON ON REAL PROPERTY § 60.01, at 390–91 (David A. Thomas ed., 1994); *see* RESTATEMENT (THIRD) OF PROPERTY § 4, at xxv (Tentative Draft No. 1, 1989) (proposing adoption of single servitude in place of three distinct servitudes). *See generally* Reichman, *Toward A Unified Concept of Servitudes,* 55 S.CAL. L.REV. 1179 (1982).

envelope—of the house. The patio awning is likewise not an "extension of the structure" because, while it nominally extends outward from the building, it is conceded to be a "quasi-temporary" structure used seasonally and removable without affecting the wall to which it is attached. It does not expand the living space or create an additional room; it does not even enclose the patio but merely shades it.

Because the trial judge correctly concluded that construction of the shed dormer and the awning do not violate the prohibitions of the Easement,[7] the grant of summary judgment to Arnold was correct.

*Affirmed.*

7. We have no occasion in this case to construe or apply D.C.Code § 45–2602.1 (Supp.1994), effective March 17, 1993, which requires the written consent of the holder of a recorded conservation easement before the District of Columbia may issue a permit for "construction, demolition, alteration, or repair" of the property subject to the easement.