**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Plaintiff,

v.

**GEORGETOWN UNIVERSITY,**
Defendant.

**No. CIV.A. 01–634(RWR).**

United States District Court,
District of Columbia.

Dec. 31, 2001.

Edward John Maginnis, Gregory K. Wells & Associates, P.A., Largo, MD, Cheryl Crandall Burke, Washington Metropolitan Area Transit Authority, Washington, DC, for Washington Metro. Area Transit Authority.

W Michael Holm, Womble Carlyle Sanoridge & Rice, McLean, VA, for Georgetown College.

John Chrysostom Maginnis, III, Washington, DC, for Georgetown University.

### MEMORANDUM OPINION

ROBERTS, District Judge.

Plaintiff, the Washington Metropolitan Area Transit Authority ("WMATA"), brought this action seeking declaratory relief, an injunction and damages against defendant Georgetown University ("Georgetown"). Plaintiff alleges that defendant is trespassing on certain land owned by plaintiff, in violation of a property deed now over a century old. Plaintiff filed an application for a preliminary injunction, and both parties moved for summary judgment.[1] Because the plain, unambiguous language of the deed grants defendant the right to undertake the activity at issue, plaintiff's application for a preliminary injunction will be denied, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted.

### BACKGROUND

Plaintiff WMATA owns property in the District of Columbia designated as Lot 822, Square 1321 (the "Riders' Fund Land"). WMATA obtained this property pursuant to an April 9, 1997 Order of Conveyance entered by the Court of Appeals for the District of Columbia Circuit. The Riders' Fund Land is adjacent to certain property owned by Georgetown. A paved, private right-of-way known as Fowler's Road runs in a north-south direction from Georgetown's property to the north and crosses the eastern part of the Riders' Fund Land. Fowler's Road divides the Riders' Fund Land into two parcels: the western parcel is designated as "Parcel Two," and the eastern parcel is designated as "Parcel Three." Georgetown uses and maintains Fowler's Road, which connects Georgetown's campus with Canal Road. (Compl. ¶¶ 5–8; Answer ¶¶ 5–8.)

An August 10, 1895 deed, as amended by a February 14, 1900 deed (collectively, the "deed") determines the rights of the parties with respect to the location and use of Fowler's Road. The deed conveyed the Riders' Fund Land from William J. Fowler and Barbara Fowler to the Washington and Great Falls Electric Railway Company ("Railway Company"). WMATA is the successor-in-interest to the rights of the Railway Company. Georgetown is successor-in-interest to the rights of William J. Fowler and Barbara Fowler. (Compl. ¶¶ 9–11 & Ex. B; Answer ¶¶ 9–11.) The Fowlers reserved certain rights as to the Riders' Fund Land, and these rights now

---

1. Plaintiff moved for summary judgment on Counts I and III of its Complaint which seek injunctive relief and declaratory judgment, respectively. In this same motion, plaintiff moved for partial summary judgment on the issue of liability as to Count II of its Complaint for trespass.

belong to Georgetown as successor-in-interest. These rights, as stated in the deed, include:

[1] the perpetual right to pass and repass over any and all parts of the aforesaid 'Parcels Numbers Two and Three', to and from and between the lands lying on either side thereof[;]

[2] the absolute right to locate and dedicate, at any time in the future one or more public streets or highways across the said 'Parcel Number Two (2)' of a width of not less than sixty (60) feet nor more than one hundred and twenty (120) feet each [as long as it does not interfere with the Railway Company's running of railroad cars or the Railway Company's successor-in-interest's operation or maintenance of any road subsequently built by the Railway Company; and] [2]

[3] [the right to have a] private right of way leading from the public road known as the Canal Road ... shall remain a private right of way as it is at present, and the right to free, uninterrupted and unobstructed use of the same as a highway, subject to the erection and maintenance of a bridge by [the Railway Company] across the same, is hereby expressly reserved unto the said William Fowler, his heirs and assigns forever, it being understood and agreed that the width of said private right of way is and shall continue always to be not less that [sic] twelve (12) feet in width where it passes across the land herein conveyed to the [Railway Company].

(Compl.Ex. B.) Fowler's Road is the "private right of way" referenced in the deed. (Compl. ¶ 13; Answer ¶ 13.)

On March 23, 2000, Georgetown wrote to WMATA and inquired about purchasing or leasing Parcel Three of the Riders' Fund Land. Georgetown wanted to use a portion of Parcel Three to accommodate a construction project on the university campus. The parties, however, could not reach an agreement to sell or lease Parcel Three. (Compl. ¶¶ 15–17 & Ex. D; Answer ¶¶ 15–17.)

In July 2000, the parties met to discuss Georgetown's proposal to "reconfigure part of [Fowler Road] ... to allow appropriate access into the new Southwest Quadrangle project and the rest of the campus." (Compl.Ex. E.) Part of Georgetown's proposed reconfiguration would occur on WMATA-owned portions of Parcel Two and Parcel Three, and Georgetown would use its access rights under the deed to do the reconfiguration. (Id.) The proposed reconfiguration consists of widening parts of Fowler's Road from its current width of twenty-two feet to a new width of thirty-six feet (a fourteen foot increase). (Compl. Ex. F; Def.'s Mem. at Ex. 1 (Brangman Aff. ¶ 10).) Georgetown's proposed reconfiguration only widens the existing Fowler's Road, and there is no evidence that Georgetown has proposed to "relocate" the right-of-way. (Compl.Exs.E–F, H.)

The parties met again in September 2000, at which time WMATA informed Georgetown that Georgetown "has no legal right to unilaterally relocate an easement." (Compl.Ex. G.) WMATA requested that Georgetown notify WMATA of any construction that Georgetown planned to undertake within the easement area. Accordingly, on November 13, 2000, Georgetown informed WMATA that Georgetown would be undertaking "site grading and

---

**2.** There is no evidence that the Railway Company ever built a road on any part of the WMATA property. (Def.'s Mem. Supp. Mot. for Summ. J. ("Def.'s Mem.") at Ex. 1 (Brangman Aff. ¶ 8).)

curb and gutter work within the easement area" and construction to complete a retaining wall that terminates at the easement area. (Compl.Ex. H.) Georgetown informed WMATA that the construction would be completed within "the coming weeks" after November 13, 2000, and that any WMATA property disturbed by the construction would be "restored to its previous condition prior to the start of [Georgetown's] work." (*Id.*)

Sometime during or near March 2001, Georgetown sought WMATA's permission to destroy an abandoned concrete bridge abutment on WMATA's land at no expense to WMATA. WMATA gave Georgetown permission, and Georgetown spent $10,000 to remove the structure. After Georgetown completed this project, on March 22, 2001, plaintiff filed a Complaint for declaratory and injunctive relief and an application for a preliminary injunction against Georgetown's proposed widening of Fowler's Road. (*See* Def.'s Mem. at Ex. 1 (Brangman Aff. ¶ 12–13).) Plaintiff and defendant subsequently filed cross motions for summary judgment.

## DISCUSSION

### I. SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant bears the initial burden of proving that there is "no genuine issue." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been met, the nonmovant must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* The mere allegation of some factual dispute between the parties is not alone sufficient to defeat a motion for summary judgment. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses" and it should be construed accordingly. *Celotex,* 477 U.S. at 323–324, 106 S.Ct. 2548. In considering a summary judgment motion, a court is to believe "[t]he evidence of the nonmovant ..., and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. No genuine issue exists unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

### A. *Deed Interpretation*

The parties agree that the deed is unambiguous. (Pl.'s Mem. Supp. Mot. for Summ. J. ("Pl.'s Mem.") at 12; Def.'s Mem. at 6.) There are no material facts in dispute; rather, the parties' dispute centers on the interpretation of the deed's terms. Plaintiff argues that it "wins this case because of a single fact: Fowler's Road, prior to [Georgetown's] recent unlawful trespass, was, for decades, an *existing* road, the location of which was well-settled." (Pl.'s Mem. at 5.) Based on this premise, plaintiff contends that defendant's longtime use of Fowler's Road at the road's current width precludes defendant from unilaterally relocating the road without plaintiff's permission. (*Id.* at 5–10.) Plaintiff contends that although the deed's language unambiguously established a minimum width for Fowler's Road, the deed did not grant defendant the right to relocate or expand the right of way. (*Id.* at 12–13.) The deed's language granting defendant the right to "pass and repass" is a mere "walking" easement, and does not intend to allow the dominant tenant to relocate the easement for "urban"-type purposes. (*Id.* at 15.)

Defendant argues that the deed requires Fowler's Road to be "at least 12 feet in width," with "no prohibition on expansion, nor any maximum width." (Def.'s Mem. at 6.) The deed's language stating that Fowler's Road "shall remain a private right of way as it is at present" requires that Fowler's Road be maintained as a private right of way and not be converted into or dedicated as a public road. (*Id.*) Defendant also argues that the deed's broad and inclusive language granting "the perpetual right to pass and re-pass over any and all parts of [the Riders' Fund Land]" further supports an intent to permit Georgetown to widen Fowler's Road as needed, as long as the road-widening did not interfere with the Railway Company's railroad or any road that the Railway Company subsequently built on the Riders' Fund Land. (Def.'s Mem. at 8.)

■■■ " 'Absent [an] ambiguity, a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence .... A contract is not ambiguous simply because the parties have disputed interpretations of its terms. The question whether ambiguity exists is one of law, and must be decided by the court.' " *Bagley v. Foundation for the Preservation of Historic Georgetown*, 647 A.2d 1110, 1113 (D.C.1994) (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)); *see Dodek v. CF 16 Corp.*, 537 A.2d 1086, 1092–93 (D.C.1988). In addition, "[i]f a deed is unambiguous, the court's role is limited to applying the meaning of the words ... but if it is ambiguous, the parties' intention is to be ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction." *Foundation for the Preservation of Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C.1994); *see Steinkamp v. Hodson*,

718 A.2d 107, 110 (D.C.1998). The parties have not argued that the deed's language is ambiguous or that extrinsic evidence is at issue, but instead "have merely presented two competing versions of what the parties intended by the disputed language in the [deed]." *Dodek*, 537 A.2d at 1093. The deed, then, speaks for itself and is to be interpreted as a matter of law. *Id.*

**B.** *Unambiguous Right to Widen Fowler's Road*

■■■ The deed unambiguously states that Georgetown, as the Fowlers' successor-in-interest, has a "private right of way leading from the public road known as the Canal Road [that] shall remain a private right of way as it is at present," and that "the width of said private right of way is and shall continue always to be not less [than] twelve (12) feet in width where it passes across the [Riders' Fund Land]." (Compl.Ex. B.) " 'The court may not create ambiguity where none exists,' " *Bagley*, 647 A.2d at 1113 (quoting *Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1556 (D.C.Cir.1991)), and I will not endeavor to do so here.

The plain language of the deed requires that Fowler's Road be maintained as a private right-of-way that is at least twelve feet wide, that Georgetown be permitted to make reasonable use of Fowler's Road in conjunction with the Riders' Fund Land, that WMATA be permitted to erect and maintain a bridge across Fowler's Road, and that Georgetown not undertake activity that interferes with railway operations or road maintenance on the Riders' Fund Land. Nothing in the language of the deed prohibits Georgetown from widening Fowler's Road as long as Georgetown's activity does not interfere with roads on WMATA's property. *See Penn Bowling Recreation Ctr. v. Hot Shoppes*, 179 F.2d 64, 66 (D.C.Cir.1949) ("It is true that where the

nature and extent of the use of the easement is, by its terms, unrestricted, the use by the dominant tenement may be increased or enlarged.").

WMATA has not argued or even suggested that Georgetown's proposed construction will interfere with *any* of WMATA's activities, let alone interfere with roads in particular. WMATA also has not provided any support for its arguments that Georgetown is unilaterally relocating Fowler's Road or otherwise undertaking activity with respect to Fowler's Road that violates the plain, unambiguous language of the deed. There is no basis for WMATA's trespass claims, and, accordingly, their trespass claims must fail as a matter of law.

 In addition, the deed's use of the terms "perpetual," "free, uninterrupted and unobstructed" shows that the grantors intended for their successors-in-interest (here, Georgetown) to be able to adapt Fowler's road to meet their changing needs. *See Chevy Chase Land Co. v. United States*, 355 Md. 110, 733 A.2d 1055, 1073 (1999) ("The use of the term 'perpetual' clearly indicates that the easement was intended to be of indefinite duration and, particularly when combined with the term 'free,' suggests that the use of the easement was to be dynamic, *i.e.*, adaptable to the evolving circumstances and transit needs of those intended to benefit from

the right-of-way.").[3] Here, Georgetown's proposal to widen Fowler's Road by fourteen feet is a reasonable use of the easement to enable construction of academic-related facilities. There is no evidence that Georgetown's proposed widening of Fowler's Road would interfere with any railroad or other type of road, or even with WMATA's use of the Riders' Fund Land. *See Penn Bowling Recreation Ctr.*, 179 F.2d at 68 ("In determining what is a reasonable use, the easement is to be construed in the light of the situation of the property and the surrounding circumstances for the purpose of giving effect to the intention of the parties."). Georgetown's proposed reconfiguration and fourteen-foot widening of Fowler's Road, therefore, is consistent with the deed's plain language and intent, and it is reasonable as a matter of law.[4]

 I do not hold, however, that Georgetown's right to widen Fowler's Road is limitless. Although the deed is silent as to the road's maximum permissible width, the court may supply the omitted term so that the easement will be used for the reasonable development of the dominant estate.

 "[I]n the absence of an express term limit, a court must first interpret the agreement to determine if the agreement unambiguously omitted the term or if a

---

3. Maryland common law principles provide guidance for relevant District of Columbia common law issues. *See Heard v. United States*, 686 A.2d 1026, 1029 (D.C.1996); D.C.Code § 49–301 (West 2000).

4. Even if the deed's language were ambiguous, however, the parties' intentions are to be "ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction." *Foundation for the Preservation of Historic Georgetown v. Arnold*, 651 A.2d at 796. These rules of construction

require that "restrictions on land use should be construed in favor of the free use of land and against the party seeking enforcement." *Id.* at 797 (citing *Moses v. Hazen*, 69 F.2d 842, 844 (1934)). Absent record evidence as to the circumstances surrounding the deed's execution at the turn of the twentieth century, the deed should be construed in favor of permitting Georgetown to widen Fowler's Road by fourteen feet, and construed against WMATA, as the party seeking to enforce a land restriction unsupported by the record evidence in this case.

term was present but ambiguous." *Lerner v. Lerner Corp.*, 132 Md.App. 32, 750 A.2d 709, 716 (Md.2000). In this case, the deed unambiguously omitted a maximum width for Fowler's Road. "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204 (1981). "[W]here there is in fact no agreement, the court should supply a term which comports with community standards of fairness and policy rather than analyze a hypothetical model of the bargaining process." *Id.* § 204 cmt. d. The typical case involves a contract that is silent as to duration, and a court will imply a "reasonable duration" based on the "subject matter of the agreement." *Lerner*, 750 A.2d at 716 (holding that the lower court properly considered the "totality of the circumstances" in supplying an eleven-year duration term for a Settlement Agreement entered into by two corporate officers and brothers).

 Applying this reasonable use principle to an easement agreement that was silent as to the scope of the easement's use, the Court of Appeals for the District of Columbia held that:

A grant of an easement in general terms without restriction is available for all reasonable uses to which the dominant estate may be devoted. *E.g., Penn Bowling Recreation Ctr. v. Hot Shoppes, Inc.*, 179 F.2d 64 (1949) [other citations omitted]. The use of the easement at the time of its creation does not *absolutely* limit its future use. Thus, some

courts have allowed the use of an easement for commercial purposes in certain situations even though that easement was used previously only for residential purposes. [Citations omitted.]

The use of an easement created by a general grant, however, is not without limitation. The right of way cannot be used in a manner that would burden the servient estate to a greater extent than was contemplated or intended at the time of the grant. [Citations omitted.] The use of the easement is not one of unlimited use, but one of unlimited *reasonable* use. In examining the question of whether the use is reasonable, one must consider the invasion of the servient landowner's rights that may result from increased or changed use, as well as the potential obstruction of the dominant estate owner's enjoyment of his estate which could be caused by restrictions on use of the easement. [Citations omitted.] The propriety of a particular use is determined by the specific circumstances involved in that case. *See Penn Bowling Recreation Center v. Hot Shoppes, Inc., supra* (determination of reasonableness is question for trial court) [other citation omitted].

*Wheeler v. Lynch*, 445 A.2d 646, 648–49 (D.C.1982) (emphases in original) (holding that the trial court's self-imposed time and use restrictions on the easement were reasonable where the easement was shared by both the dominant and servient estates). Therefore, Georgetown does not have the unrestricted right to widen Fowler's Road beyond reason.[5] It is clear though, that the road's initial width does not set for all time the road's maximum permissible width. As the *Wheeler* Court stated, "[t]he

---

5. At oral argument, counsel for Georgetown stated that the original railway bridge over Fowler's Road spanned forty feet. It may be that Georgetown would have an "unlimited reasonable use" of Fowler's Road such that it may widen the road to forty feet as long as it does not interfere with any bridge used for railroad purposes on the servient estate. What width would exceed reason, however, is an issue left for another day.

use of the easement at the time of its creation does not *absolutely* limit its future use." *Id.* at 648 (emphasis in original).

## II. PRELIMINARY INJUNCTION

 Plaintiff has applied for a preliminary injunction. Injunctive relief is available only if "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by an injunction." *Davenport v. International Bhd. of Teamsters,* 166 F.3d 356, 360 (D.C.Cir.1999); *see also Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). Generally, injunctive relief "seeks to maintain the status quo pending a final determination of the merits of the suit . . . ." *Holiday Tours,* 559 F.2d at 844. Since WMATA has failed on the merits of its claim, with defendant being awarded summary judgment, plaintiff's application for a preliminary injunction will be denied.

### *CONCLUSION*

WMATA has failed on the merits of its Complaint as the deed does permit Georgetown to widen Fowler's Road by fourteen feet. Accordingly, WMATA is not entitled to a preliminary injunction or summary judgment. Georgetown is entitled to summary judgment on WMATA's Complaint.