Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

#### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 8, 2003    Decided October 31, 2003

No. 02-7016

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLANT

v.

GEORGETOWN UNIVERSITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 01cv00634)

———

*Joseph J. Zimmerman*, Assistant General Counsel, argued the cause for appellant. With him on the briefs were *Cheryl C. Burke*, General Counsel, *Carol B. O'Keeffe*, Principal Deputy General Counsel, and *Gerard J. Stief*, Associate General Counsel.

*William M. Holm* argued the cause and filed the brief for appellee.

———

 Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

Before: EDWARDS, RANDOLPH, and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

Dissenting opinion filed by *Circuit Judge* RANDOLPH.

EDWARDS, *Circuit Judge*: This case concerns an easement held by Georgetown University on property owned by the Washington Metropolitan Area Transit Authority ("WMATA"). In 1895, William J. and Barbara Fowler, Georgetown's predecessors-in-interest, sold a strip of their land in the District of Columbia to the Washington and Great Falls Electric Railway Company, WMATA's predecessor-in-interest. The deed conveying the property reserved an easement for the Fowlers and their successors for a private right-of-way of "not less than twelve feet in width." It is undisputed that, at the time of this conveyance, the private right-of-way was 12 feet in width on an existing road called Fowler's Road.

In 1951, Georgetown requested and obtained a permit from WMATA's predecessor-in-interest to relocate the easement and pave a 22-foot-wide road on Fowler's Road. Since 1951, Fowler's Road has been 22-feet wide. In 2000, Georgetown announced a plan to widen the roadway again, from 22 feet to 36 feet. This time, WMATA did not consent. WMATA then filed this trespass action against Georgetown. The District Court granted summary judgment for Georgetown and denied summary judgment to WMATA, holding that nothing in the language of the deed prohibits Georgetown from unilaterally widening Fowler's Road so long as Georgetown does not interfere with roads on WMATA's property. On appeal, WMATA argues that the District Court erred in its judgment, because nothing in the deed permits Georgetown to widen the road unilaterally. We agree. We hold that Georgetown's proposed widening of the road amounts to a relocation of the easement, which is not permissible under District of Columbia law without the mutual consent of the parties. Therefore, we reverse the District Court's grant of judgment to Georgetown and remand the case for entry of judgment in favor of WMATA.

## I.  Background

WMATA currently owns property known as Lot 822, Square 1321, or the Rider's Fund Land.  It is adjacent to certain property owned by Georgetown.  A paved, private road known as Fowler's Road runs through WMATA's property near its eastern end.  Fowler's Road connects the Georgetown campus with Canal Road.

On August 10, 1895, the Washington and Great Falls Electric Railway Company, WMATA's predecessor-in-interest, obtained the property by deed for $1750.00 from William J. and Barbara Fowler, Georgetown's predecessors-in-interest.  The property consisted of two parcels of land, referred to by the deed as Parcels Number Two and Three.  The railway company planned to build a bridge on the property for the running of railway trains.  The Fowlers owned property on both sides of the parcels that they sold to the railway company.  They reserved three easements on the deeded property as follows:

> [1]  the perpetual right to pass and re-pass over any and all parts of the aforesaid "Parcels Numbers Two and Three", to and from and between the lands lying on either side thereof . . .

> [2]  the absolute right to locate and dedicate, at any time in the future one or more public streets or highways across the said "Parcel Number Two (2)" of a width of not less than sixty (60) feet nor more than one hundred and twenty (120) feet each;  provided, only, that the exercise of the said several rights hereby reserved shall not interrupt nor interfere with the proper running of the cars of the party of the second part, its successors or assigns upon the railway to be laid and constructed by it or them on the lands hereinbefore conveyed or the operation and maintenance of its road when the same shall have been completed, nor with the proper use of the said lands in and about the construction of said road or railway . . .

> [3] the private right of way leading from the public road known as the Canal Road, to the house of said William J. Fowler and other houses lying to the North of the lands hereby conveyed shall remain a private right of way as it is at present, and the right to the free, uninterrupted and unobstructed use of the same as a highway, subject to the erection and maintenance of a bridge by said party of the second part across the same, is hereby expressly reserved unto the said William J. Fowler, his heirs and assigns forever, it being understood and agreed that the width of said private right of way is and shall continue always to be not less that [sic] twelve (12) feet in width where it passes across the land herein conveyed to said company.

1895 Deed, Joint Appendix ("JA") 20.

This case concerns the third easement referenced in the deed. Fowler's Road is the "private right of way" to which it refers. The road lies at the eastern end of the property. As the deed indicates, the Fowlers' right to use the property in the second easement was limited; the use could not interfere with the running of the railroad cars upon the railway to be constructed. The Fowlers' right to use the property in the third easement was subject to the railway company's right to build a bridge. In turn, the railway company's right to build a bridge was limited: It was required to leave the Fowlers a private right-of-way of "not less than twelve feet."

By 1951, Georgetown had acquired the Fowlers' land, and the Capital Transit Company was the successor-in-interest to the Washington and Great Falls Railway Company. In 1951, Georgetown sought a permit from the Capital Transit Company to pave Fowler's Road and widen the right-of-way to 22 feet. Capital Transit agreed and, on September 24, 1951, the parties executed a revocable permit which allowed Georgetown to build the proposed roadway. *See* Thirty-Day Revocable Permit To Cross D.C. Transit Right-of-Way, JA 53-54. Pursuant to the permit, Georgetown paved a road that measured 22 feet wide on Fowler's Road. Fowler's Road cur-

rently serves a portion of the university campus on which Georgetown is constructing several new buildings.

On March 23, 2000, Alan Brangman, the University Architect for Georgetown University, informed the General Manager of WMATA in writing of Georgetown's interest in purchasing or leasing a portion of the WMATA property. Letter from Brangman to White of 3/23/00, JA 24. However, the parties were unable to agree to terms for the sale or lease of the land. Subsequently, on July 24, 2000, the University wrote WMATA indicating a desire to "reconfigure part of the University's roadway leading from Canal Road to the main campus," purportedly pursuant to Georgetown's easement rights under the deed. Letter from Brangman to Denton Kent, WMATA's Director of Property Development and Management, 7/24/00, JA 27-28. Georgetown planned to expand the road's width from 22 feet to 36 feet. On September 13, 2000, WMATA provided written notification to Georgetown indicating that it did not consent to Georgetown's plans for the widening of Fowler's Road. The letter also stated that Georgetown "has no legal right to unilaterally relocate an easement." Letter from Kent to Brangman of 9/13/00, JA 29-30. On November 13, 2000, Georgetown informed WMATA that it would be undertaking site grading and curb and gutter work within the easement area, and that it would restore any property disturbed by the construction to its previous condition. Letter from Brangman to Kent of 11/13/00, JA 31. Georgetown undertook and completed this work in March 2001.

On March 22, 2001, WMATA filed a complaint for declaratory and injunctive relief and a motion for a preliminary injunction in the United States District Court for the District of Columbia. WMATA sought to enjoin Georgetown from trespassing on its property by relocating Fowler's Road. Georgetown and WMATA each filed motions for summary judgment, on which the District Court held a hearing.

On December 31, 2001, the District Court denied WMATA's preliminary injunction and summary judgment motions and granted summary judgment for Georgetown.

The District Court held that the "plain, unambiguous language of the deed" granted Georgetown "the right to undertake the activity at issue." *Washington Metro. Area Transit Auth. v. Georgetown*, 180 F. Supp. 2d 137, 139 (D.D.C. 2001) (hereinafter "*WMATA*"). The District Court held that, since the 1895 deed only specified a minimum width for Fowler's Road, without specifying a maximum width, the deed did not prohibit Georgetown from "widening Fowler's Road as long as Georgetown's activity does not interfere with roads on WMATA's property." *Id*. at 142. The court held further that Georgetown's widening of the road was a "reasonable use" of the easement. *Id.* at 143.

## II. ANALYSIS

### A. Choice of Law

This litigation is properly maintained in federal courts because the interstate compact between the District of Columbia, Maryland, and Virginia creating WMATA confers original jurisdiction to the United States District Courts concurrent with the courts of those states in all actions brought by or against WMATA. *See* Section 81, Washington Metropolitan Area Transit Authority Compact, D.C. CODE § 9-1107.01 (2001). WMATA chose the United States District Court for the District of Columbia as the venue for this action, "because, among other reasons, the property that is the subject of this litigation is located in the District of Columbia." Complaint ¶ 4, JA 6. In addressing the parties' claims, the District Court applied District of Columbia contract and property law. Neither party has objected to the application of District of Columbia law, and we find no error in the District Court's choice of law. Therefore, we too apply the law of the District of Columbia in addressing the parties' claims on appeal. *See Nello L. Teer Co. v. Washington Metro. Area Transit Auth.*, 921 F.2d 300, 302 n.2 (D.C. Cir. 1991) (applying the same law as that applied by the district court where parties did not brief the choice of law issue nor object to the district court's choice of law, and no error found in trial court's choice of law); *Lee v. Flintkote Co.*, 593 F.2d

1275, 1280 (D.C. Cir. 1979) (noting potential unfairness of invoking a body of foreign law that neither side has considered applicable).

## B. Standard of Review

The interpretation of the plain language of a contract is a question of law subject to *de novo* review. *See KiSKA Const. Corp. v. Washington Metro. Area Transit Auth.*, 321 F.3d 1151, 1158 (D.C. Cir.), *cert. denied*, 2003 WL 21692197 (2003) (quoting *LTV v. Gulf States Steel, Inc.*, 969 F.2d 1050, 1055 (D.C. Cir.), *cert. denied*, 506 U.S. 1022 (1992)). We therefore review the District Court's interpretation of the deed *de novo.*

## C. The Language of the Deed

On appeal, WMATA argues that the District Court erred in interpreting the plain language of the deed as granting Georgetown the unilateral right to widen its easement on Fowler's Road. Under District of Columbia law, "[d]eeds, like contracts, are 'construed in accordance with the intention of the parties insofar as it can be discerned from the text of the instrument.'" *Found. for the Pres. of Historic Georgetown v. Arnold*, 651 A.2d 794, 796 (D.C. 1994) (quoting *Simmons v. Rosemond*, 223 F. Supp. 61, 67 (D.D.C. 1963)). If the deed's language is unambiguous, the court need only apply the meaning of the words. If the language is ambiguous, the court must determine the parties' intent as to the scope of the easement in light of the circumstances surrounding its execution. *Arnold*, 651 A.2d at 796; *see also Steinkamp v. Hodson*, 718 A.2d 107, 110 (D.C. 1998). The parties agree that there is no applicable parol or extrinsic evidence of the parties' intent arising from the execution of the 1895 Deed. Rather, each side argues that the deed is unambiguous, but they present two competing interpretations of the deed's language. WMATA has the better of the argument.

This case is largely controlled by *Carrollsburg v. Anderson*, 791 A.2d 54 (D.C. 2002), a decision that was *not* considered by the District Court because *Carrollsburg* did not issue until after the trial court had rendered its judgment. Under *Carrollsburg*, courts must look to the language of the deed

and the subsequent acts of the parties to determine the intent of the parties with regard to the scope of an easement:

> In the great majority of jurisdictions, the rule is, that, once the location of an expressly deeded easement is established, whether by the language of the instrument creating the easement or by subsequent acts of the parties fixing on the ground the location of a general grant of a right of way, the site location may not be changed thereafter by either the owner of the dominant estate or the owner of the servient estate, unless both parties consent to the relocation, excepting, however, where the document creating the easement also contains an express or implied grant or reservation of power to relocate.

*Carrollsburg*, 791 A.2d at 61 (quoting *Davis v. Bruk*, 411 A.2d 660, 664 (Me. 1980)).

In concluding that a servient estate condominium association could not relocate an easement held by neighboring property owners on its property, *Carrollsburg* relies on the common-law rule of *Davis v. Bruk*, while noting that the Restatement rule, allowing relocation by the servient estate in limited circumstances, would dictate the same result. *See Carrollsburg*, 791 A.2d at 63. Under the common-law rule, neither the servient nor the dominant estate may relocate an easement without the other's consent once its location is fixed. Since Georgetown, the dominant estate, is attempting to relocate the easement, the common-law rule relied on by *Carrollsburg* is fully implicated in this case. *Carrollsburg* also holds that, even when the location of an easement is not clearly defined by a deed, "the location may be subsequently fixed by an express agreement of the parties, or by an implied agreement arising out of the use of a particular way by the grantee and acquiescence on the part of the grantor." *See Carrollsburg*, 791 A.2d at 61 (quoting *Taylor v. Solter*, 231 A.2d 697, 701 (Md. 1967)).

It is clear from the language of the deed that Georgetown obtained a right of passage over a particular way. The parties do not dispute that the deed established the location

of the easement on Fowler's Road, a road that existed at the time that the deed was executed. *See* Appellant's Br. at 7; Appellee's Br. at 7. The deed's description of the width of the road as "not less than twelve feet" did not specify the exact boundaries of the easement. But the deed's language leaves no doubt that the easement referred to an existing road, whose boundaries established the location of the easement. The deed described the road as "the private right of way leading from the public road known as the Canal Road, to the house of said William J. Fowler." 1895 Deed, JA 20. It stated that the road "shall remain a private right of way as it is at present." *Id.* This language – "as it is at present" – has clear content, because it indicates that the easement was located on an existing roadway. And neither the roadway nor its width are in dispute in this case. In other words, the original easement was in a clearly fixed location. Once an easement is fixed on the ground in a particular location, such as on an existing road, neither party can relocate it without the other's consent unless the instrument creating the easement clearly indicates that it may do so. *See Carrollsburg*, 791 A.2d at 61.

Appellee argues that the deed's "not less than twelve feet" language implicitly, if not explicitly, gives Georgetown a right to widen the easement right-of-way without WMATA's consent. *See* Appellee's Br. at 26. The District Court agreed with this interpretation in holding that Georgetown could widen the road as long as Georgetown's activity does not interfere with roads on WMATA's property. *WMATA*, 180 F. Supp. 2d at 142. This interpretation is superficially appealing, but it raises nonsensical possibilities. Under the District Court's construction, Georgetown would be free to act unilaterally to relocate the easement to a width beyond the 22-foot-right-of-way granted pursuant to the 1951 permit; but nothing in the deed or the 1951 permit would prohibit WMATA from counteracting any such unilateral action taken by Georgetown. Thus, for example, if Georgetown paved a 36-foot-wide road without WMATA's consent, WMATA could unilaterally act to build property on the newly constructed road so long as Georgetown was left with a 12-foot-wide right-

of-way pursuant to the terms of the deed. This makes no sense and there is nothing in the record to suggest that this is what the parties intended.

WMATA provides a more plausible interpretation of the "not less than twelve feet" language that is supported by the terms of the deed. The third easement explicitly conferred on WMATA's predecessor the right to build a bridge: The Fowlers' right-of-way was "subject to the erection and maintenance of a bridge by said party of the second part across the same." 1895 Deed, JA 20. In building the bridge, it was "understood and agreed" that the railway company had to leave 12 feet or more for the Fowlers' private right-of-way. In light of the language establishing the railway company's right to build a bridge, the "not less than twelve feet" language was clearly intended to protect the Fowlers' right-of-way from being narrowed to under 12 feet by the railway company's construction activities. The limitation on the railway company's right to build a bridge is the import of that language. Therefore, the phrase "not less than twelve feet" cannot be read as the unambiguous grant of a unilateral right to the Fowlers and their successors to expand the road beyond 12 feet.

Appellee points to the deed's specification of both a minimum and a maximum width for the second easement as evidence that the parties intended the width of the third easement to be unlimited. Based on the language of the second easement, appellee argues that had the parties intended a maximum width for the Fowler's Road easement, they would have explicitly identified one. Georgetown concludes that in omitting a maximum width for the private right-of-way, the parties intended to grant the Fowlers and their successors the right to widen the roadway beyond 12 feet. Appellee's Br. at 16-17. Georgetown's argument proves far too much.

We find the minimum and maximum width language that is related to the second easement irrelevant to the interpretation of the Fowler's Road easement. The second easement, unlike the easement in dispute in this case, provided for the

dedication of public roads that did not yet exist at the time of the deed. In contrast, the Fowler's Road easement was defined by an existing road, to which the language of the easement explicitly referred. While a maximum width specification was necessary to define the scope of an easement for roads that were not yet established, it was not needed when defining an easement that the deed located on a particular road that was already in use. The scope of the third easement was defined by the language, "is and shall continue always to be not less than twelve feet." When referencing an existing road, the parties did not need to articulate a numerical maximum width in order to know the parameters of the easement.

The subsequent acts of the parties also confirm the understanding that the parties to the deed did not intend to grant the Fowlers and their successors the unilateral right to widen the road. In 1951, Georgetown asked WMATA's predecessor, the Capital Transit Company, for permission to expand the width of the road beyond 12 feet. It was only after Capital Transit granted Georgetown a license to build a roadway that Georgetown paved a 22-foot-wide road on Fowler's Road. The fact that Georgetown sought the permission of WMATA's predecessor to expand Fowler's Road in 1951 strongly indicates that the mutual consent of the parties was needed to widen the easement. Indeed, it is noteworthy that Georgetown secured only a "revocable" permit in 1951, further indicating that the parties did not assume that Georgetown had the right to relocate the easement without consent.

The parties' express agreement in 1951 fixed the location of the easement. And as noted in *Carrollsburg,* "continuous use of a right of way, without opposition, may [also] fix the location." *Carrollsburg*, 791 A.2d at 60. Thus, in this case, there was both an express agreement in 1951 and an implied agreement arising out of Georgetown's subsequent paving and long-time use of a 22-foot road as its right-of-way. The parties explicitly agreed to allow Georgetown to pave a road on the WMATA property, specifying the location in a written permit: "The location of the roadway and the location and type of devices for the protection of our railway trestle are to

be in accordance with the drawing … which is hereto attached." Thirty-Day Revocable Permit To Cross D.C. Transit Railway Right-of-Way, JA 53. Georgetown then paved a 22-foot-wide road on Fowler's Road which it has used as its private right-of-way for approximately 50 years. These express and implied agreements were sufficient to fix the location of the easement under *Carrollsburg*. Therefore, neither party was free to unilaterally relocate the easement after its location was fixed by agreement. *See Carrollsburg*, 791 A.2d at 61.

In short, the District Court erred in holding that Georgetown's right under the deed to "free, uninterrupted, and unobstructed use" of the road "forever" entitles it to widen the road without WMATA's permission. *See WMATA*, 180 F. Supp. 2d at 143. The cited language applies only to the *use*, not location, of the easement. The District Court incorrectly assumed that Georgetown is free to expand the easement as it sees fit subject only to a rule of "reasonable use." As noted above, under District of Columbia law, a party may not unilaterally relocate an easement unless both parties consent to the relocation. "Reasonable use" of a fixed easement does not give license to unilaterally expand or relocate a right-of-way. *See Davis*, 411 A.2d at 664-65 (quoting *Sakansky v. Wein*, 169 A. 1, 3 (N.H. 1933)).

The District Court erred in holding that Georgetown's proposed unilateral widening of the right-of-way is merely a "reconfiguration" and not a "relocation" of the easement. *WMATA*, 180 F. Supp. 2d at 140. If Fowler's Road is widened by 14 feet pursuant to Georgetown's plan, the right-of-way will occupy substantially more of WMATA's land than was allowed by the 1951 permit. In other words, the boundaries of the new easement will differ greatly from those of the roadway easement agreed to by the parties in 1951. This would be an impermissible relocation of the easement.

The "location" of real property is defined as "the designation of the boundaries of a particular piece of land, either on the record or on the land itself." BLACK'S LAW DICTIONARY 951 (7th ed. 1999). To "locate" something is to set its position

and boundaries. AMERICAN HERITAGE DICTIONARY 739 (2d College ed. 1982). Therefore, to set the width of a road is to locate it, and changing the width of a road changes its location. Other courts have held that the width of a right-of-way is inevitably part of its boundaries or location, *e.g.*, *Wilson v. DeGenaro*, 415 A.2d 1334, 1336 (Conn. Super. Ct. 1979), *aff'd and adopted*, 435 A.2d 1021 (Conn. 1980) (formally adopting the trial court's decision as statement of facts and the applicable law), and that changing the boundaries of a roadway relocates it, *e.g.*, *Umphres v. J.R. Mayer Enterprises*, 889 S.W.2d 86, 90 (Mo. Ct. App. 1994). We have found no authority to the contrary, and Georgetown has pointed us to none. Therefore, we reject the suggestion that widening an existing 22-foot-wide road by 14 feet does not "relocate" it.

Finally, we reject Georgetown's argument that the deed's grant of a "perpetual right to pass and re-pass over any and all parts" of the property entitles it to change the second and third easements granted under the deed. Appellee's Br. at 22-24. Georgetown claims that the words "any and all parts" "create one or more rights of way as . . . Georgetown desire[s], subject to the single exception that such easement not interfere with the running of the Railway Company's railroad or any construction thereon." *Id.* at 22. This argument is fatally flawed. The perpetual right to pass and re-pass merely grants a right of access to the property; it does not grant Georgetown a perpetual right to pave roads as it sees fit anywhere on WMATA's property. If Georgetown had the rights that it now claims, it would not have sought a permit to expand and pave the Fowler's Road easement in 1951. If the right to pass and re-pass were construed to permit Georgetown to pave new roads and create whatever rights-of-way it desires, then the specifications of rights-of-way under the second and third easements in the deed would be rendered meaningless.

Georgetown cites no authority whatsoever to support the suggestion that a "pass and re-pass" provision overrides the bounds of specific easements in a deed. Rather, Georgetown merely cites the "pass and re-pass" language to suggest, as did the District Court, that its purported right to widen

Fowler's Road involves a matter of *reasonable use*, not relocation. This argument is simply wrong as a matter of law. "Reasonable use" and "relocation" are distinct concepts, and the former does not subsume the latter. The widening of a road clearly relocates it. In other words, paving within the bounds of an existing right-of-way implicates questions of reasonable use, whereas paving to expand an existing right-of-way implicates the rule against unilateral relocation. *See, e.g., Hayes v. Aquia Marina, Inc.*, 414 S.E.2d 820, 823 (Va. 1992) (permitting a dominant tenement to pave a road that did not expand the dimensions of the existing right-of-way easement). *Davis* makes clear that the dominant tenement's right to reasonable use of an easement does not entitle it to use more of the servient tenement's land by relocating the right-of-way. *See Davis*, 411 A.2d at 664-65. The D.C. Court of Appeals relied on the rule of *Davis* in *Carrollsburg*.

The *Davis* rule against unilateral relocation is entirely consistent with the reasonable use cases on which Georgetown relies. *See Chevy Chase Land Co. v. United States*, 733 A.2d 1055, 1076 (Md. 1999) (construing a grant of an easement in general terms as permitting use for all reasonable purposes by dominant tenement); *Penn Bowling Recreation Ctr. v. Hot Shoppes*, 179 F.2d 64, 67 (D.C. Cir. 1949) (allowing easement owner "reasonable use and enjoyment of the easement for purposes of ingress and egress"). *See also Wheeler v. Lynch*, 445 A.2d 646, 648 (D.C. 1982) (holding that a grant of an easement in general terms is available for all reasonable uses). These cases do not hold that the right to reasonable use of an easement trumps the common-law rule against the unilateral relocation of an easement.

Georgetown's proposed widening of Fowler's Road amounts to a change in the easement's location rather than its use. Therefore, we hold that Georgetown cannot widen the roadway easement absent WMATA's consent. The dissent agrees with Georgetown's position that it has the right to pave new rights-of-way over WMATA's entire property largely as it sees fit. The terms of the deed, coupled with the parties' 1951 agreement, their long-standing practices, and the appli-

cable case law governing relocations of easements, clearly negate this view.

### III.  CONCLUSION

The judgment of the District Court is reversed.  The case is hereby remanded for entry of judgment in favor of WMATA.

*So ordered.*

1

RANDOLPH, *Circuit Judge*, dissenting: The deed states that Fowler's Road "shall continue always to be not less tha[n] twelve feet in width." The right to expand the road, far from being unbounded, was subject to the rail company's erecting a bridge across the right of way. The spacing of the bridge abutments – something within the company's control – thus set the outer limit on the width of the right of way. Furthermore, Fowler's Road had to remain a "highway."

Subject to these limitations, the deed gave Georgetown the absolute right to expand the road. There was no need for additional language prohibiting WMATA from counteracting such expansion. All of this makes perfect sense when one remembers the purpose of the original transaction. The railroad wanted land over which it could run a train line. As long as the Fowlers did not interfere with that enterprise, there was no reason for the railroad to care whether they widened the right of way to two lanes or three.

Nonetheless the court holds that a right of way of "not less tha[n] twelve feet" means a right of way of "not more than twelve feet."

I therefore respectfully dissent.